Matthew A. CLARK, as Father
and Next Friend of Sasha
R. Clark, Appellant,

v.

ESTATE OF Kimberly Rae RICE, by its
Administrator, Andrew Scott RICE
and Farm Bureau Mutual Insurance
Company, an Iowa Corporation, Ap-
pellees.

No. 01–0595.

Supreme Court of Iowa.

Oct. 9, 2002.

Philip A. Burian of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellant.

Gerald T. Sullivan of Crawford, Sullivan, Read & Roemerman, P.C., Cedar Rapids, for appellees.

CADY, Justice.

In this appeal, we must decide if a minor child has actionable claims against a parent for loss of consortium, loss of support, and infliction of emotional distress from witnessing fatal injuries suffered by the parent, as a result of the parent's negligent operation of a motor vehicle. We conclude the claims are not actionable and affirm the district court.

## I. Background Facts and Proceedings.

Sasha Clark was a passenger in a motor vehicle operated by her mother, Kimberly Rice, in Marion, Iowa, on October 21, 1996. Sasha was nine years of age at the time. Kimberly drove the vehicle from a road into an intersection of a highway, and into the path of a truck traveling along the

highway. The truck violently struck the vehicle near the driver's door. Sasha sustained physical injuries from the collision. Kimberly died as a result of her injuries.

At the time of the accident, Sasha was an insured party under two separate policies of insurance. One policy was with IMT Insurance Company and was owned by Sasha's father, Matthew Clark. The other policy was with Farm Bureau Mutual Insurance Company and was owned by Kimberly. Matthew and Kimberly were divorced. Both policies contained uninsured and underinsured protection.

On October 20, 1998, Matthew brought an action on behalf of Sasha against the administrator of Kimberly's estate. He claimed Kimberly was negligent in the operation of the vehicle, which resulted in damages to Sasha. In addition to damages for personal injury, Matthew sought to recover damages for Sasha's loss of consortium and loss of support caused by her mother's death. Matthew also sought recovery from IMT and Farm Bureau based on the uninsured and underinsured provisions of the insurance policies.

Matthew voluntarily dismissed the claim against IMT Insurance Company. The IMT policy contained an anti-stacking provision. Farm Bureau then filed a motion to strike the claims for loss of consortium and loss of support. Farm Bureau claimed the child had no legally recognizable claim against a parent for loss of consortium and support resulting from the death or injury to that parent. The district court granted the motion and dismissed the claims for loss of consortium and loss of support. Matthew sought interlocutory review, which we denied.

On March 26, 1999, Matthew filed an amended petition to assert a separate cause of action for severe emotional distress suffered by Sasha as a result of witnessing the fatal consequences of the accident on Kimberly. In response to a motion to adjudicate law points filed by Farm Bureau, the district court dismissed the claim. The district court granted the amendment to the petition but determined Sasha had no independent claim for emotional distress as a bystander to the accident as a matter of law.

The parties then submitted the negligence claim to the district court based on stipulated liability and damages. These damages included medical expenses, loss of use of body and mind, scarring and disfigurement, mental anguish, and pain and suffering.

On April 10, 2001, the district court entered judgment. Matthew subsequently filed a notice of appeal of those claims dismissed by the district court prior to the judgment.

On appeal, Matthew claims Sasha had a legally recognizable independent claim for severe emotional distress suffered as a witness to the injuries and death of her mother, and the district court improperly dismissed the action. He also claims the district court erred in dismissing Sasha's claims for loss of consortium and loss of support.

## II. Standard of Review.

Our standard of review is for correction of errors at law. Iowa R.App. P. 6.4.

## III. Claim for Emotional Distress.

■ It is a general rule in this state, with recognized exceptions, that there can be no recovery for emotional distress "absent intentional conduct by a defendant or some physical injury to the plaintiff." *Mills v. Guthrie County Rural Elec. Coop. Ass'n,* 454 N.W.2d 846, 852 (Iowa 1990). Although stated in the negative, this general rule reflects two affirmative principles.

First, the rule implicitly recognizes emotional harm to be real and compensable. *See Rice v. City of Council Bluffs,* 124 Iowa 639, 642, 100 N.W. 506, 507 (1904). Second, emotional distress can be a proper element of damages in a tort action. *Doe v. Cherwitz,* 518 N.W.2d 362, 365 (Iowa 1994). It is a proper element of damages when there has been an invasion of some legally protected interest by way of willful and malicious conduct. *See Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 354 (Iowa 1989) (emotional distress damages permitted when tort involves willful or unlawful conduct); *Kraft v. City of Bettendorf,* 359 N.W.2d 466, 471 (Iowa 1984) (false arrest); *Blakeley v. Estate of Shortal,* 236 Iowa 787, 791–93, 20 N.W.2d 28, 30–31 (1945) (act of suicide); *Holdorf v. Holdorf,* 185 Iowa 838, 842, 169 N.W. 737, 738–39 (1918) (willful assault). In such instances, emotional distress lies at the very core of the tort itself, and becomes an element of damages because it arises from the violation of the legally protected interest itself. *Lawrence v. Grinde,* 534 N.W.2d 414, 422 (Iowa 1995) (emotional distress damages that arise from conduct which invades a legally protected interest are recoverable when they are a reasonably foreseeable consequence of the conduct); *Niblo,* 445 N.W.2d at 355 (emotional distress lies at the core of the tort of wrongful discharge). Emotional distress can also be a proper element of damages when associated with physical injury. *See Sourbier v. State,* 498 N.W.2d 720, 723 (Iowa 1993) (damages for personal injuries include mental pain and suffering). Emotional distress damages are recoverable, along with other types of damages, once the personal injury tort is established. Dan B. Dobbs, *The Law of Torts* § 302, at 822 (2000). This type of emotional distress damage has been described as "parasitic" damages because it is derived from the personal injury. *Id.; see Niblo,* 445 N.W.2d at 355 (recovery for emotional distress as an additional or "parasitic" element of damages).

Yet, like most other jurisdictions, we have refused to recognize an independent claim for emotional distress based on negligence without some physical harm. *See Doe,* 518 N.W.2d at 365 (citing *Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 182–83 (Iowa 1991)) (Iowa does not recognize negligent infliction of emotional distress as a separate cause of action). In essence, we have deviated from this rule only under two theories of recovery.

The first exception involves bystander liability based on the breach of a duty of care by the defendant not to cause emotional distress to those who witness conduct that causes serious harm to a close relative. *Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981). The elements of this tort are:

1. The bystander was located near the scene of the accident.

2. The emotional distress resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

3. The bystander and the victim were husband and wife or related within the second degree of consanguinity or affinity.

4. A reasonable person in the position of the bystander would believe, and the bystander did believe, that the direct victim of the accident would be seriously injured or killed.

5. The emotional distress to the bystander must be serious.

*Id.* at 108.

A second exception has been carved out for direct victims of emotional

distress and exists when the nature of the relationship between the plaintiff and the defendant is such that it supports the imposition of a duty of care on the defendant to avoid causing emotional harm to the plaintiff. *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990); *Niblo,* 445 N.W.2d at 354. Under the tort theory of negligence, there is no general duty of care to avoid causing emotional harm to another. *See Niblo,* 445 N.W.2d at 354. However, where the parties assume a relationship that is contractual in nature and deals with services or acts that involve deep emotional responses in the event of a breach, we recognize a duty of care to protect against emotional distress. *Lawrence,* 534 N.W.2d at 421; *Oswald,* 453 N.W.2d at 639. Thus, we have recognized a cause of action to recover damages for negligently inflicted emotional distress based upon medical malpractice involving the treatment by a physician of a pregnant woman and her premature fetus. *Oswald,* 453 N.W.2d at 639. We have also recognized a cause of action to recover negligently inflicted emotional distress in the performance of a contract for funeral services. *Meyer v. Nottger,* 241 N.W.2d 911, 920 (Iowa 1976). Much earlier, even before we began to formulate our present rules for liability for emotional harm, we permitted recovery for emotional distress for negligent delivery of a telegram announcing the death of a close relative. *Cowan v. W. Union Tel. Co.,* 122 Iowa 379, 386–87, 98 N.W. 281, 282–84 (1904); *Mentzer v. W. Union Tel. Co.,* 93 Iowa 752, 768–69, 62 N.W. 1, 6 (1895). On the other hand, we have refused to recognize such a duty from an attorney-client relationship in a claim for attorney malpractice involving services performed in a bankruptcy case. *Lawrence,* 534 N.W.2d at 423. The acts performed by the lawyer were not so related to matters of mental concern that emotional distress would naturally result from negligent acts. *Id.*

Since the time we first recognized this exception, our cases have recognized a duty only when there has been some contractual relationship between the parties. *See Lawrence,* 534 N.W.2d at 421; *Millington v. Kuba,* 532 N.W.2d 787, 793 (Iowa 1995).

Matthew asserts he alleged an actionable claim on behalf of Sasha for her emotional distress under these governing principles for three reasons: (1) she sustained physical injury; (2) she was a bystander to her mother's death; and (3) the parent-child relationship. Thus, he claims her physical injuries brought her within the general rule permitting recovery for emotional distress, and her status as a bystander and her parent-child relationship brought her within the exceptions to the rule.

## 1. Physical Injury.

■ As part of the negligence claim against Kimberly, the petition alleged Sasha suffered physical injuries from the accident. This allegation supports recovery for emotional distress. *See Roling v. Daily,* 596 N.W.2d 72, 76 (Iowa 1999) (personal injury action for emotional damages resulting from vehicle accident). However, the particular claim dismissed by the district court, which is the claim at issue on appeal, was a separate and independent cause of action brought by Matthew for negligent infliction of emotional distress.

■ When a negligence claim establishes physical injury, a separate claim for emotional distress is subsumed in the underlying negligence claim. *Richards v. Town of Eliot,* 780 A.2d 281, 293 (Me. 2001). Yet, Matthew did not pursue a claim for emotional distress in conjunction with the physical injury to Sasha, but brought the claim independent of any physical injury. Thus, we confine our re-

view to the allegations of the separate claim, which fails to allege any physical injury. Matthew cannot now change this theory and attempt to use the physical injury claim to support a claim for emotional distress. Accordingly, we do not consider the physical injuries sustained by Sasha in determining the viability of the claim for emotional distress.

## 2. Bystander Liability.

The bystander exception to the rule against recovery for emotional distress without physical injury was specifically created to permit a plaintiff who is closely related to a victim of a serious injury to recover from the defendant who negligently inflicted the injury for the emotional distress suffered as a result of witnessing the victim's injury. *See Barnhill*, 300 N.W.2d at 108. It is based on a breach of the general duty not to negligently cause emotional distress to those who witness conduct that causes injuries to others under circumstances where emotional distress to the bystander is reasonably foreseeable. Matthew claims the exception should logically be extended to include witnessing injury to a defendant when, as in this case, all the other elements of a bystander claim are otherwise met.

We refuse to extend the bystander exception beyond its intended scope and design. This exception was created to permit recovery for emotional distress for those who witness injury inflicted on the direct victim of a negligent act, and it imposes special limitations to recovery under such circumstances. The duty of care to support the claim is derivative of the general duty of care owed to the direct victim and extends to bystanders based on the foreseeability of emotional harm to bystanders under certain circumstances and conditions. We recognize the emo-

tional injury to a bystander is separate from the underlying injury to the direct victim. *Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511 (Iowa 1993). Yet, the duty to the bystander is built on the duty owed to the direct victim. It is a general duty not to cause emotional distress to bystanders who witness injuries to others from negligent acts.

In this case, Matthew brought the claim for emotional distress on behalf of Sasha as a direct victim of her mother's negligent conduct. Thus, any recovery requires a separate and independent duty of care owed to Sasha by her mother not to negligently inflict emotional distress. There must be "a duty owed by the specific defendant to the specific plaintiff." *Robinson v. United States*, 175 F.Supp.2d 1215, 1226 (E.D.Cal.2001). The applicable duty under a direct victim theory of recovery is not the general duty of care not to inflict emotional distress to bystanders who witness injuries to others. *Id.* at 1225. Moreover, the special circumstances imposed in bystander claims do not apply to direct victim claims. *Id.* at 1226. Thus, even though the facts of this case reveal some of the same characteristics of a bystander claim, we must analyze Sasha's claim as other direct victim claims, where we have indicated that they must be based on the existence of a special relationship between the parties that supports the imposition of a specific duty of care to refrain from engaging in conduct that will inflict emotional distress. We accordingly turn to consider the claim under our second recognized exception.

## 3. Direct Victim.

Our cases have pinpointed the source of the duty of care to support a claim by a direct victim for recovery of emotional distress from negligent conduct of a defendant to be the relationship be-

tween the parties.[1] *Oswald*, 453 N.W.2d at 639. The relationship between the parties is a recognized source of a duty of care. *Sankey v. Richenberger*, 456 N.W.2d 206, 209 (Iowa 1990). However, the relationship requires more than an emotional tie between the parties. *Millington*, 532 N.W.2d at 793. Instead, we have required the existence of a contractual relationship between the parties involving acts that " 'carry with them deeply emotional responses in the event of breach.' " *Lawrence*, 534 N.W.2d at 421 (quoting *Oswald*, 453 N.W.2d at 639). This limitation is essentially derived from the general rule that emotional damages cannot arise from the breach of every protected interest, but only from those "of sufficient importance as a matter of policy to merit protection from emotional impact." *Hilt v. Bernstein*, 75 Or.App. 502, 707 P.2d 88, 95 (1985). The requirement of such a relationship supports the imposition of liability separate and independent from the general duty of care applicable in all negligent actions to avoid foreseeable risks of harm. The rationale for such an independent duty of care has been explained by one leading scholar:

> When the defendant owes an independent duty of care to the plaintiff, there is no risk of unlimited liability to an unlimited number of people. Liability turns solely on the relationships accepted by the defendant, usually under a contractual arrangement. Consequently, the duty extends only to those for whom the contract was made. When the defendant contracts to provide services for childbirth, he is on notice that negligent acts will likely cause emotional harm.

Dobbs, *The Law of Torts* § 312, at 849.

■ Liability for emotional distress is imposed for negligence independent of intent or physical injury when the act negligently performed is " 'so coupled with matters of mental concern or solicitude, or with feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.' " *Oswald*, 453 N.W.2d at 639 (quoting *Taylor v. Baptist Med. Ctr.*, 400 So.2d 369, 374 (Ala. 1981)). This is a standard that must be met to support the essential duty to support a claim for negligent infliction of emotional distress to a direct victim.

■ There is no doubt that the relationship between a parent and a child can be exceptionally close and deeply emotional. Moreover, it is the type of relationship that would understandably produce emotional distress if one of the parties to the relationship witnessed serious injury or death to the other. Nevertheless, it is not a relationship that is contractual in nature. Additionally, the act performed in the course of the relationship at issue in this case, the operation of a motor vehicle, is not so coupled with matters of mental concern that the breach of the duty of care in performing the act will necessarily or reasonably result in emotional distress. The claimed emotional distress is simply "too far removed from the defendant['s] negligent conduct" to support the imposition of a duty of care to avoid inflicting emotional distress. *Lawrence*, 534 N.W.2d at 423.

■ We refuse to recognize an independent duty of care on a parent to avoid inflicting emotional distress on a passenger child in a motor vehicle for witnessing injuries inflicted on the parent as the result of negligence in the operation of the

---

**1.** Other jurisdictions have recognized that the duty may also be assumed by the defendant or imposed as a matter of law, as well as arise out of a relationship. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278, 282 (1989).

motor vehicle. It is a circumstance outside the exceptions to the rule against emotional distress absent intentional conduct or physical injury.

### IV. Loss of Consortium and Support.

■ We have not previously considered whether a child has an actionable claim of loss of consortium and support against a parent. This is because parental immunity has existed throughout most of the development of our law to immunize parents from any tort claims by children. However, we partially abrogated the immunity doctrine in 1981, and no longer recognize parental immunity as a bar to an action by an unemancipated child against a parent for damages caused by the negligence of the parent. *Turner v. Turner*, 304 N.W.2d 786, 788–89 (Iowa 1981). Instead, immunity exists only for negligent acts involving the exercise of parental authority over a child or the exercise of parental discretion in providing care. *Smith v. Smith*, 646 N.W.2d 412, 415 (Iowa 2002). Thus, a child has a cause of action against a parent for damages based on negligence in the operation of a motor vehicle. *Turner*, 304 N.W.2d at 789. The issue we now face is whether the damages in such a claim by a child against a parent includes loss of parental consortium and support predicated on separate injuries to the parent.

■ We recognize a child has a cause of action for loss of parental consortium and support for the death or injury of a parent by a third party. *Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983); *see also Lang v. City of Des Moines*, 294 N.W.2d 557, 563 (Iowa 1980) (loss of support). Thus, parental consortium and support is a recognized protected interest. Yet, such a claim is required to be brought by the injured parent or the administrator of the estate under Iowa Code section 613.15 (2001). *Audubon–Exira Ready Mix, Inc.*, 335 N.W.2d at 152. There is no independent cause of action for parental consortium. *Id.*[2]

■ In this case, Matthew seeks consortium and support as a part of the damages in the child's direct negligence claim against the estate of her mother. He seeks to extend the law of consortium and support to recognize an independent claim directly against the parent.

■ In *McIntosh v. Barr*, we determined that a wife did not have a direct claim against the husband for loss of consortium due to an injury to the husband caused by the husband's own negligence. *McIntosh v. Barr*, 397 N.W.2d 516, 517 (Iowa 1986). We rejected such a claim on the basis that consortium was not a legally protected interest as against a spouse. *Id.* We observed the spouse had no legal obligation to provide consortium. *Id.* We think the same rationale applies to direct claims for consortium by children against a parent. *See Plain v. Plain*, 307 Minn. 399, 240 N.W.2d 330, 332 (1976). A parent has no legal duty to provide consortium to a child. Thus, the harm claimed to have been suffered by a child is not legally recognized. Of course, a parent does have a legal obligation to support a child, but that duty is independent of the duty of care applicable to an action for negligence. There is no authority to support a negligence action by a child for loss of support and consortium against parents who negli-

---

**2.** This requirement may be avoided if the child establishes it is impossible, impractical, or not in the child's best interest for the parent to maintain the action. *Nelson v. Ludovissy*, 368 N.W.2d 141, 146 (Iowa 1985).

gently caused injury or death to themselves.

## V. Conclusion.

We conclude the district court properly dismissed the claims for loss of consortium, loss of support, and negligent infliction of emotional distress.

**AFFIRMED.**