# IN THE COURT OF APPEALS OF IOWA

No. 17-1235
Filed July 5, 2018

**ALEX W. OLSON,**
        Plaintiff-Appellant,

**vs.**

**DURANT COMMUNITY SCHOOL DISTRICT,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Cedar County, Mark R. Lawson,

Judge.


        Alex Olson appeals an order granting summary judgment in favor of Durant

Community School District.  **AFFIRMED.**



        James S. Zmuda of Califf & Harper, P.C., Moline, Illinois, for appellant.

        Mikkie R. Schiltz and Wendy S. Meyer of Lane & Waterman LLP,

Davenport, for appellee.



        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Alex Olson appeals an order granting summary judgment in favor of Durant Community School District (Durant) on his claims of disability discrimination, intentional infliction of emotional distress, and negligent infliction of emotional distress. He contends genuine issues of material fact exist as to each of his claims.

## I. Background Facts and Proceedings

Olson has been diagnosed with attention deficit disorder, post-traumatic stress disorder, a sleep disorder, and autism. Olson resided in and initially attended the North Scott Community School District (North Scott). Olson and his parents experienced problems at North Scott in relation to educators not following Olson's individualized education program (IEP). Olson was also allegedly harassed by teachers and bullied by other students at North Scott. Olson's father, Allen, was a teacher at Durant's middle school, and he spoke to Durant's high school principal, Tony Neumann, and superintendent, Duane Bennett, about the possibility of Olson attending Durant, although he did not reside in the district. Bennett approved, and Durant entered into a contract for special-education-instruction services with North Scott through the end of Olson's junior year, ending on June 30, 2013. Prior to entering into the contract, Durant was aware of Olson's diagnoses. Olson began attending Durant in January 2012, which was in the second semester of his sophomore year. Durant is a significantly smaller school district than North Scott, with fewer resources. A second contract was subsequently entered into between the schools for Olson's senior year, the 2013–2014 school year, ending on June 30, 2014.

Allen's employment with Durant was terminated in the spring of 2013 as part of a reduction in force. After Allen's termination, Olson's parents requested an independent educational evaluation be conducted as to Olson. Durant agreed to the evaluation, and the Olsons selected Alyson Beytein as the evaluator. Beytein completed a behavior consultation report in September 2013 detailing the challenges Olson faces and her recommendations for addressing the same. Beytein submitted a second report in January 2014, in which she noted "Durant . . . has provided sufficient and often extensive accommodations for" Olson, but he "needs support that cannot be given within an educational setting."

From the onset, Olson was expected to graduate from Durant on schedule at the end of the 2013–2014 school year. However, Olson, had very significant school-attendance issues during his time at Durant, despite multiple changes to his IEP aimed at remedying the same. As a result, Olson was unable to accumulate enough credits to graduate as planned. At an IEP meeting in April 2014, a potential plan was discussed that, if implemented, would allow Olson to attend Durant for another year and graduate in May 2015.

At an IEP meeting in March 2014, Olson's parents asked Olson's special education teacher, Alan Hartley, who was also serving as Durant's athletic director at the time, whether Olson would be eligible to participate in school sports in the 2014–2015 academic year.[1] Hartley advised the Olsons by letter on April 1 of his conclusion that, based on the Iowa High School Athletic Association's (IHSAA)

---

[1] Olson participated in track during his sophomore year at Durant, wrestling and football during his junior and senior years, and golf during his senior year. According to Olson's deposition testimony, his participation in sports caused his school attendance to improve.

4

eligibility rules, Olson's athletic eligibility would end with the 2013–2014 academic year. Hartley further advised the Olsons they could appeal his conclusion to the IHSAA and Durant would allow Olson to compete in school athletics if the IHSAA concluded he was eligible. On May 29, the IHSAA notified the Olsons by letter that it agreed with Durant that Olson was ineligible for further participation in high school athletics. At an IEP meeting in early June, Olson was provided a tentative schedule for the 2014–2015 school year. On June 6, Olson's parents appealed the IHSAA's eligibility decision. Thereafter, on June 11, Bennett notified North Scott's superintendent that Durant would not be entering a new contract as to Olson for the 2014–2015 school year. Bennett testified in his deposition that he decided not to enter into another contract with North Scott because of Olson's lack of progress and poor attendance at Durant, in addition to Beytein's opinion that Durant was unable to provide the services Olson required to succeed. Bennett felt that, because Durant could not provide Olson with the services he needed to succeed, it was his obligation to not renew the contract. On June 13, after Bennett's decision, the IHSAA notified the Olsons by letter of its decision to reverse its prior decision and allow Olson an additional year of athletic eligibility.

After the contract was not renewed, Olson had the option of returning to North Scott, but he decided not to. After "briefly" looking at other schools, Olson and his parents decided it would be best for him to obtain his GED and then start college. Olson ultimately obtained his GED in the summer of 2014, passing his exams on his first attempt without studying, and started college in the fall. After successfully completing three semesters at a college in South Dakota, Olson transferred to a college in Illinois; he is on course to graduate in 2018.

Olson obtained a right-to-sue letter from the Iowa Civil Rights Commission in May 2015. In June, Olson filed a petition at law asserting claims of disability discrimination in education under the Iowa Civil Rights Act (ICRA), intentional infliction of emotional distress, and negligent infliction of emotional distress. Durant ultimately moved for summary judgment on all claims, and the district court granted the motion. As to Olson's disability-discrimination claim, the court concluded "[t]here are simply no circumstances here raising an inference of disability discrimination in the renewal decision" and Olson is therefore "unable to demonstrate a prima facie case of disability discrimination." As to the intentional-infliction-of-emotional-distress claim, the court concluded Durant's conduct was not sufficiently outrageous for the claim to withstand summary judgment. As to the negligent-infliction-of-emotional-distress claim, the court concluded emotional-distress damages are not recoverable in tort in Iowa absent intentional conduct or physical injury, and the exceptions to that rule do not apply in this case. The court denied Olson's subsequent motion to reconsider and this appeal followed.

## II.    Standard of Review

"We review a district court ruling on a motion for summary judgment for correction of errors at law." *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018) (quoting *Homan v. Branstad*, 887 N.W.2d 153, 163 (Iowa 2016)); *accord TSB Holdings, L.L.C. v. Bd. of Adjustment for the City of Iowa City*, ___ N.W.2d ___, ___, 2018 WL 2455027, at *6 (Iowa 2018). Summary judgement is only appropriate when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "An issue of fact is 'material' only when the

dispute involves facts which might affect the outcome of the suit, given the applicable governing law." *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Wallace*, 754 N.W.2d at 857). "In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor." *Homan*, 887 N.W.2d at 163–64. Summary judgment is appropriate "if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Nelson*, 867 N.W.2d at 6 (quoting *Wallace*, 754 N.W.2d at 857). "Speculation is not sufficient to generate a genuine issue of fact." *Id.* at 7 (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 96 (Iowa 2005)).

## III. Discussion

### A. Disability Discrimination

Olson contends the district court erred in granting Durant's summary-judgment motion on his disability-discrimination claim. The ICRA prohibits discrimination in education on the basis of a disability. *See* Iowa Code § 216.9(1) (2015). Olson's petition alleged a disparate-treatment theory of discrimination—Durant discriminated against him by declining to renew the contract, allegedly because of the perceived burdens flowing from his disabilities.[2] *See Pippen v.*

---

[2] Olson also forwarded a purported claim of retaliation under the ICRA. *See* Iowa Code § 216.11(2). However, Olson's petition and appellate brief appear to allege Olson was retaliated against for engaging in an activity protected under Iowa Administrative Code chapter 281-41, concerning special education. Such a claim is not a cognizable one under

*State*, 854 N.W.2d 1, 9 (Iowa 2014) (noting the distinction between disparate-treatment and disparate-impact claims of discrimination). The establishment of a disparate-treatment claim generally requires proof of a discriminatory motive on the part of the decision maker. *See Hamer v. Iowa Civil Rights Comm'n*, 472 N.W.2d 259, 263 (Iowa 1991). "Under the [ICRA], a plaintiff may prove discrimination with direct evidence or by the indirect, burden shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Reiss v. ICI Seeds, Inc.*, 548 N.W.2d 170, 174 (Iowa Ct. App. 1996). Here, the parties expressly agree there is no direct evidence of discrimination, thus necessitating the establishment of the claim through the burden-shifting framework. *See id.*

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996). If the plaintiff is able to establish a prima facie case of discrimination, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* "If the defendant satisfies [its] burden of asserting a legitimate explanation, the burden then shifts to the plaintiff to prove the asserted reason is merely pretext and that the discriminatory motive played a substantial part in the actions taken." *Id.*

---

the ICRA. *See id.* ("It shall be an unfair or discriminatory practice for . . . [a]ny person to . . . retaliate against another person in any of the rights protected against discrimination by *this chapter* because such person has lawfully opposed any practice forbidden under *this chapter*, obeys the provisions of *this chapter*, or has filed a complaint, testified, or assisted in any proceeding under *this chapter*." (Emphasis added)).

The establishment of a prima facie case of a disparate-treatment disability-discrimination claims requires, among other things, proof that the plaintiff suffered an adverse action "under circumstances from which an inference of unlawful discrimination arises." *Fuller v. Iowa Dep't of Human Servs.*, 576 N.W.2d 324, 328 (Iowa 1998). "An inference of discrimination arises where there is some evidence of a causal connection between a plaintiff's disability and the adverse . . . action taken against the plaintiff." *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000).

Olson contends the following circumstances raise an inference of discrimination: (1) the manner in which Durant made its nonrenewal decision, (2) the timing of Durant's announcement of the nonrenewal decision, (3) Durant's conduct after the nonrenewal decision, and (4) the history between Durant and Olson and his family.

As to the manner in which the nonrenewal decision was made, Olson generally claims "Bennett indisputably did not consult Olson, his parents, or Olson's IEP team in advance of making the decision not to renew the contract," and those parties were generally under the assumption that Olson would be able to continue his education at Durant for another year. Olson contends, "Durant's conduct of making the secret, unilateral decision [to] not renew" the contract "without the involvement of Olson's IEP team or his parents, is unreasonable, highly suspect, and creates a reasonable inference of discriminatory motive." We agree that it is undisputed that Bennett did not consult with others in making his decision, but we find this undisputed fact does not give rise to a causal connection between any disability and the nonrenewal decision. Olson's position that the

decision "is unreasonable, highly suspect, and creates a reasonable inference of discriminatory motive," is mere speculation, which "is not sufficient to generate a genuine issue of fact." *Nelson*, 867 N.W.2d at 7 (quoting *Hlubek*, 701 N.W.2d at 96).

As to the timing of Durant's announcement of the decision, Olson complains "Durant announced its nonrenewal decision after school was recessed for the summer," the decision was announced only a few weeks before the existing contract expired, "Olson learned of Durant's nonrenewal decision only days after receiving approval from IHSAA to participate in" athletics for another year, and "Durant terminated [Olson's father's] employment with the district the year prior." Olson speculates these circumstances create an inference of discrimination. But we find nothing suspect with the timing of the decision or its announcement. It was only logical for the superintendent to assess the situation and make a decision after the close of the 2013–2014 academic year, but before the previous contract was to expire by its express terms. When Olson learned of the decision relative to when he learned of the IHSAA's determination is immaterial to say the least. And the record in this case shows that Olson's father's employment was terminated as a part of an innocent reduction in force. Again, we find these facts do not give rise to a causal connection between any disability and the nonrenewal decision, and Olson's speculation to the contrary is insufficient to withstand summary judgment. *See id.*

As to Durant's conduct after the decision, Olson complains "Durant made no effort to coordinate with North Scott . . . to transfer Olson's IEP or transition accommodation services" for the next academic year and Durant never offered an

explanation for the decision. These factual allegations are, however, not supported in the record and, in any event, we find they do not give rise to a causal connection between any alleged disability and the decision.

Finally, as to the history between Durant and Olson's family, Olson generally contends "Durant was aware [his parents] were unhappy, at least at times, with the way Durant was handling [his] education" and such awareness, coupled with the "time intensive" nature of educating Olson gives rise to an inference of discrimination. Again, we disagree this speculation gives rise to a causal connection between any disability and the nonrenewal decision. Olson's parents' position on Olson's education as well as the "time intensive" nature of the same was prevalent throughout Olson's time at Durant. Yet, Bennett—the nonrenewal decision maker—had already renewed the contract once in 2013, despite the existence of these same circumstances. *Cf. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) ("[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive."); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."); *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 175 (8th Cir. 1992) (finding argument that employer developed discriminatory animus against a member of a protected class less than two years after hire to be "simply incredible").

Simply stated, we agree with the district court's assessment that, "[e]ven viewing the record in the light most favorable to the plaintiff, the record is devoid

of [any] circumstances" raising an inference of illegal discrimination.  On the record before us, Olson's bare assertions and speculation do not show a genuine issue of material facts that would allow Olson to establish a prima facie case of disability discrimination and Durant was therefore entitled to judgment as a matter of law.[3]

B.      Intentional Infliction of Emotional Distress

As to Olson's intentional-infliction-of-emotional-distress claim, the district court concluded as a matter of law that Durant's conduct was not sufficiently outrageous to withstand summary judgment.  Having reviewed the record and Olson's arguments, we conclude the record shows no genuine issue of material fact exists concerning conduct by Durant that could reasonably be regarded as outrageous under the applicable standard.[4]  We affirm the grant of summary judgment on this claim without further discussion pursuant to Iowa Court Rule 21.26(1)(c), (d), and (e).

C.      Negligent Infliction of Emotional Distress

Olson accepts that "[t]he general rule in Iowa is emotional distress damages are not recoverable in torts absent intentional conduct by a defendant or some

---

[3] In the alternative, Olson concedes Durant has proffered legitimate, nondiscriminatory reasoning for the nonrenewal decision, but he contends a genuine issue of material fact exists as to whether Durant's reasoning is a mere pretext for discrimination.  We have considered Olson's speculative arguments on this issue and alternatively conclude there is no genuine issue of material fact as to whether Durant's reasoning was pretextual.  Viewing the evidence in the light most favorable to Olson, his disability-discrimination claim fails as a matter of law under the *McDonnell Douglas* burden-shifting framework.

[4] *See Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" (quoting *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156–57 (Iowa 1996))).

physical injury to the plaintiff." *Miranda v. Said*, 836 N.W.2d 8, 14 (Iowa 2013) (internal quotation marks omitted) (quoting *Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 169 (Iowa 2002)). But he contends his claim falls under an exception to the rule: "where the parties assume a relationship that is contractual in nature and deals with services or acts that involve deep emotional responses in the event of a breach, [courts] recognize a duty of care to protect against emotional distress." *Clark*, 653 N.W.2d at 171. Such a duty exists "only when there has been some contractual relationship between the parties." *Id.*

The district court granted summary judgment on this claim, reasoning "no breach of contract occurred in this case," as "Durant simply declined to *renew* a contract for educational services." Olson states the district court "is plainly wrong" and argues:

> Durant breached its Contract in two ways: (1) it failed to abide by the [Iowa Department of Education] regulations in making a unilateral placement decision, without the involvement of Olson's parents and his IEP team; and (2) Durant failed to fully implement Olson's IEPs and failed to utilize available resources for Olson's benefit.

These appear to be claims that Durant breached the contract by providing Olson with inadequate special-education services. As it did in the district court, Durant contends such claims are not properly before the court because Olson failed to exhaust his administrative remedies under the Individuals with Disabilities Education Act (IDEA).[5] Of course, "[w]hen a party fails to exhaust all of its required administrative remedies, the court has no authority to hear the case" and must dismiss it. *Ghost Player, L.L.C. v. State*, 860 N.W.2d 323, 326 (Iowa 2015). The

---

[5] Although the issue was raised, the district court did not rule upon the exhaustion issue.

question, then, is whether Olson was required to register his complaints at the administrative level before bringing them in the district court.

"[T]he IDEA declares as its first purpose 'to ensure that all children with disabilities have available to them a free appropriate public education" (FAPE). *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 753 (2017) (quoting 20 U.S.C. § 1400(d)(1)(A)). "A State receiving federal funding under the IDEA," such as Iowa, "must make such an education 'available to all children with disabilities.'" *Id.* (quoting 20 U.S.C. § 1412(a)(1)(A)). As part of the IDEA, Congress established procedural safeguards to ensure children with disabilities can obtain a FAPE. *See* 20 U.S.C. § 1415(a); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 947 (8th Cir. 2017). "One safeguard is an opportunity to present complaints about the provision of a FAPE in 'an impartial due process hearing.'" *J.M.*, 850 F.3d at 947; *see* 20 U.S.C. § 1415(f). "A party aggrieved by the outcome of an IDEA due process hearing may challenge the outcome before the state educational review agency." *J.M.*, 850 F.3d at 947 (quoting *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013)); *see* 20 U.S.C. 1415(g)(1). "The outcome of the administrative review hearing may then be disputed in the district court." *J.M.*, 850 F.3d at 947 (quoting *J.B.*, 721 F.3d at 592); *see* 20 U.S.C. § 1415(i)(2)(A).

This exhaustion requirement applies to any claim that a school has failed to provide an appropriate education. *See Fry*, 137 S. Ct. at 753–55; *J.M.*, 850 F.3d at 948. The conduct on the part of Durant for which Olson seeks relief in relation to his negligent-infliction-of-emotional-distress claim is clearly conduct that falls under the IDEA as an alleged failure "to provide [him] with meaningful access to education by offering individualized instruction and related services appropriate to

[his] 'unique needs.'" *See Fry*, 137 S. Ct. at 755; *accord id.* 748–49 ("As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction."). Olson did not exhaust his administrative remedies in relation to any claim that Durant failed to provide him with a proper education and, therefore, the district court was without authority to grant him relief for the same.[6]  *See Ghost Player, L.L.C.*, 860 N.W.2d at 326. We affirm the grant of summary judgment on Olson's negligent-infliction-of-emotional-distress claim on this alternative ground.  *See DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002) ("We have in a number of cases upheld a district court ruling on a ground other than the one upon which the district court relied *provided* the ground was urged in that court.").

IV.    **Conclusion**

We affirm the district court ruling granting summary judgment in favor of Durant on all claims.

**AFFIRMED.**

McDonald, J., concurs; Danilson, C.J., concurs in part and dissents in part.

---

[6] We note our belief that exhaustion of administrative remedies under the IDEA was not required for Olson's ICRA and intentional-infliction-of-emotional-distress claims.  The gravamen of those claims was the alleged discriminatory act of not renewing the contract and the emotional distress that flowed therefrom.  In contrast, the negligence claim appears to focus on Durant's alleged failure to provide appropriate special-education services.

**DANILSON, Chief Judge** (concurring in part dissenting in part).

I concur with the majority except in regard to the resolution of Olson's disability-discrimination claim. The facts need only rise to the level of a genuine issue of material fact. *See Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015) ("Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.").

Here, Olson has raised facts that cannot be explained simply by a dereliction of duties performed by Superintendent Duane Bennett of the Durant Community School District (Durant). I find persuasive the summarized record of facts in Olson's motion to reconsider outlining a disregard of the past and current recommendations of the individual education plans (IEPs); a declaration that Olson was ineligible to participate in high school athletics for the 2014-2015 academic year, although his eligibility was restored by the Iowa High School Athletics Association; Bennett's reliance on a written letter from an "expert" who had little contact with Olson; Durant's failure to inform Olson of its decision to not renew the contract with North Scott Community School District (North Scott) permitting Olson to continue to attend school at Durant; the disregard for Olson's past difficulties at North Scott; and Bennett's failure to consult with Olson's IEP team before making the decision not to renew the contract. These facts are supported by the record and are sufficient to constitute a genuine issue of material fact that Durant discriminated against Olson on the basis of his disabilities. I would reverse and remand for further proceedings relative to the discrimination claim. I would affirm on the remaining claims.