# IN THE COURT OF APPEALS OF IOWA

No. 22-1513
Filed November 8, 2023

IN RE THE MARRIAGE OF BRADLEY J. NELSON
AND KATHY L. NELSON

Upon the Petition of
BRADLEY J. NELSON,
    Petitioner-Appellee/Cross-Appellant,

And Concerning
KATHY L. NELSON, n/k/a KATHY L. KONIGSMARK,
    Respondent-Appellant/Cross-Appellee.
_____

    Appeal from the Iowa District Court for Crawford County, David A. Lester, Judge.

    Former spouses appeal and cross-appeal the financial provisions of their dissolution decree. **AFFIRMED ON APPEAL AND CROSS-APPEAL.**

    P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellant/cross-appellee.

    Gregory J. Siemann of Siemann Law Firm, PLC, Carroll, for appellee/cross-appellant.

    Heard by Bower, C.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Kathy Nelson appeals and Brad Nelson cross-appeals the financial provisions of their dissolution decree. Brad also cross-appeals the district court's order he pay a portion of Kathy's attorney fees. We affirm the district court in full.

## I.     Background Facts and Proceedings

Kathy and Brad married in 2015. Both were on their second marriage, and they did not have any children during the marriage.

At the time of trial, Brad was an attorney practicing in Denison. He has been the sole owner of his law practice since before his marriage to Kathy, and he draws a yearly salary from the firm's corporation.

Kathy has a degree in elementary education and a master's degree in education administration. In her career, she worked as a teacher, coach, and principal. She retired from teaching in 2015 (before the marriage) and receives a monthly pension from the Iowa Public Employees' Retirement System (IPERS). She also taught as a substitute teacher and supplemented her pension income with Social Security benefits and an IRA annuity.

Brad and Kathy owned a building (the "Nelson Building") which has 18,000 square feet across two floors—plus underground parking and storage. Brad originally bought the building in 2009 from his former business partner and then-father-in-law from an earlier marriage. Brad's law firm rented most of the first floor for $3000 per month. A clothing store rented the rest of that floor for $500 per month. In 2013, Brad started remodeling the second floor into a "luxury condo" personal residence.

When Brad and Kathy got married, Brad transferred ownership of the Nelson Building to himself and Kathy as joint tenants with rights of survivorship. After she moved in with Brad in late 2015, Kathy managed the second-floor remodel. The two paid for these renovations with joint funds and capital from a refinanced mortgage. The total cost of remodeling and furnishing the residence was nearly $400,000 of marital funds.

At first, Brad and Kathy combined their bank accounts and deposited their income into joint holdings, though they did not combine their investments. After a few years, Brad and Kathy started to disagree about spending related to their respective families. Kathy began to keep most of her retirement income in an individual account rather than their joint accounts.

By the dissolution trial, the parties' finances were separate other than the shared mortgage and a single health savings account. Brad and Kathy mediated an agreement to divide their personal property and household goods, leaving the court to determine the value of real estate and divide assets. During testimony, each party also requested attorney fees. In its ruling, the court distributed the Nelson Building to Brad—with an estimated value of $685,000, $320,000 of which was marital property. The court also determined that all of the financial accounts, aside from a health savings account, were nonmarital assets and ordered Brad to pay Kathy an equalization payment of $86,234.46. Kathy appeals, and Brad cross-appeals.

## II.     Standard of Review

A dissolution-of-marriage proceeding is heard in equity, and we generally review the resulting dissolution de novo. *In re Marriage of Gust*, 858

N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.* "We will disturb the trial court's order only when there has been a failure to do equity." *Id.* (citation and internal quotation marks omitted).

### III. Discussion

Each party appeals portions of the court's distribution of assets. Both challenge the valuation of the Nelson Building. In her appeal, Kathy asserts the district court failed to consider her claims that Brad deposited marital funds into retirement accounts during the marriage, she should share in the increased value of Brad's law practice, and Brad dissipated marital assets while the dissolution was pending. In his cross-appeal, Brad challenges the cash equalization payment, the court's valuation of the Nelson Building, the date used to analyze the parties' overall financial picture, and the district court's order that he pay part of Kathy's attorney fees.

### A. Real Property

Both parties challenge the district court's valuation of their main asset: the Nelson Building which housed Brad's law firm and the marital home. "Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007). "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

The parties submitted a wide range of evidence regarding the property's value. The range of contemporary valuations received into evidence spanned

more than $800,000—from $367,130 by the county assessor to $1.17 million by a real estate appraiser. The parties also offered evidence flagging various issues with the other party's submitted values, including claims that the residential space was "overimproved" and that there were arguable deviations from accepted standards in the appraisals submitted by Kathy. Despite critiquing Kathy's appraisals, Brad did not offer any of his own.

The court, after making credibility findings and weighing the competing evidence, landed on a fair market value of $685,000. We are not persuaded by either party that we should revisit this determination. As a general matter, we (like the district court) are skeptical of both Brad's lowball offer to buy and the seemingly astronomical appraisal offered by Kathy. To us, it seems the district court split the difference by valuing the property at $685,000 rather than accepting any of the wildly varying proposed values. *See In re Marriage of Bainbridge*, No. 22-1299, 2023 WL 2908648, at *2 (Iowa Ct. App. Apr. 12, 2023) (finding the court's decision to "split the difference" based on deficiencies in significantly differing appraisals was fair). The trial court's valuation is reasonable and well within the range of permissible evidence. We will not disturb it. *See Hansen*, 733 N.W.2d at 703.

## B. Other Assets

In crafting the decree's property-distribution provision, the district court determined that nearly every asset and income at issue were nonmarital property. Kathy maintains the district court should have included as marital property certain retirement accounts Brad started during the marriage (which she values at $113,655) and the increased value of Brad's law practice (which she values at

$210,000). In considering the overall property distribution, we do not find Kathy has proven the division inequitable.

Brad had virtually no retirement savings when they married. And soon after the marriage, he started deferring significant compensation and investing. But Kathy testified that when Brad started to put money into his retirement accounts for himself, she also began transferring $500 per month from their joint account into an investment account of her own. Considering Kathy's own individual investments, and that her pre-existing investments appreciated significantly during the marriage, we decline to disturb the property division on this basis.

As for Brad's law firm, the firm's bank balance increased during the marriage. But this was in significant part due to (ultimately forgiven) Payroll Protection Plan loans and savings set aside for a pending lawsuit. And the record demonstrates Brad's firm, a professional corporation in which he is the sole owner, was well-established for decades before the marriage. Brad generally took a similar salary and distributions before and during the marriage, and the firm's books were entirely separate from the marital finances. For her part, Kathy was not involved in the law practice in any significant way during the marriage, she made no financial contribution, and she owns no shares of the corporation. The record also establishes the firm paid rent for its use of the space in the building in a more-or-less arms-length transaction. Given these facts, we see no basis to award Kathy any of the firm's capital or equity.

**C. Dissipation**

Kathy claims Brad dissipated marital assets during the pendency of this dissolution. She focuses her challenge on Brad's apartment expenses, his eating out, and some of his travel expenses.

In determining whether a party's expenditures amount to dissipation of assets, the court considers whether the purpose of the challenged expenditure is supported by evidence and whether it amounts to dissipation. *In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). To determine if the purpose is dissipation, the court considers:

> (1) the proximity of the expenditure to the parties' separation,
> (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage,
> (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and
> (4) the need for, and the amount of, the expenditure.

*Id.* at 104–05.

The district court considered the purpose of Brad's expenditures, applied the factors from *Fennelly*, and concluded they "were nothing more than an extension of Brad's spending pattern both before and after the parties married." We agree.

The acknowledged new expense for Brad was his apartment rent. It is essentially undisputed that acrimony between Brad and Kathy necessitated Brad moving out of the marital home, as later required by a temporary-matters order entered at Kathy's request. This first led Brad to renting a small apartment in Denison. But that location was unsuitable for working from home during the

pandemic. He later rented a "nice place in Des Moines" and split his working time between there and Denison.

Although technically a new expense, we find Brad's Des Moines apartment was a reasonable approximation of his lifestyle in the "luxury condo" marital home. We also find the record supports that the parties had separated their finances by the time Brad started using his income to pay for the Des Moines apartment. Like the district court, we see no attempt to "hide, deplete, or divert" a marital asset in Brad's spending habits. *See id.* at 105.

### D. Equalization Payment

Brad asks us to either vacate or reduce the equalization payment he owes Kathy. He argues he contributed more financially to the short-term marriage and all valuations related to the distribution should have been made as of August 2019, when he filed for dissolution, rather than as of the trial date.

"Marital property typically is valued as of the date of the trial." *In re Marriage of Thatcher*, 864 N.W.2d 533, 545 (Iowa 2015). The court may make appropriate adjustments if necessary to achieve equitable results. *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). On this record, we see no need to deviate from the typical trial-date valuation.

For contributions to the marriage, "[i]t is important to remember marriage does not come with a ledger." *Fennelly*, 737 N.W.2d at 103. We do not emphasize financial matters "over the other contributions made to a marriage in determining an equitable distribution." *Id.* at 104. While Brad entered the marriage with greater financial assets and deposited more cash into the joint accounts during the marriage, this earnings disparity was known to both parties before they wed. Kathy

contributed financially as her means allowed, including depositing her own retirement income and proceeds from selling her premarital home into the joint accounts. She also invested significant time and effort into finishing the parties' home. Without an equalization payment, Brad would unfairly and inequitably benefit from Kathy's financial, physical, and emotional investment in the marriage and marital home. As a result, we find the equalization payment ordered by the district court is appropriate and necessary to achieve equity.

### E. Attorney Fees

Brad cross-appeals the district court order he pay $10,000 of Kathy's attorney fees. He points to a paragraph in his petition for dissolution which requested "each party should be required to pay their own attorney fees" and to Kathy's answer admitting the same. He does not challenge the amount of the attorney-fee order, but rather payment of fees at all.

We find Brad's claim disingenuous at best and inconsistent with his advocacy below. At trial, Brad did not argue each party should pay their own fees, as he alleged in his petition. To the contrary, he requested Kathy pay $25,000 of his attorney fees. Kathy similarly abandoned any agreement that each party should pay their own fees when she requested Brad pay part of hers. Brad cites no authority allowing him to reinstate a claim on appeal that he argued against at trial. And we find our precedent prohibits this gamesmanship. *See, e.g.*, *Clark v. Est. of Rice*, 653 N.W.2d 166, 172 (Iowa 2002) (holding appellant was foreclosed from changing theory of liability on appeal); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378–79 (Iowa Ct. App. 1989) (discussing the doctrine of invited

error); *Vennerberg Farms, Inc. v. IGF Ins. Co.*, 405 N.W.2d 810, 814 (Iowa 1987) (discussing judicial estoppel).

**IV.     Disposition**

We affirm the district court's valuation of marital property.  The district court did not act inequitably in categorizing Brad's retirement accounts and law firm as nonmarital assets or in ordering him to pay an equalization payment to Kathy. Kathy failed to prove Brad dissipated marital assets.  And the district court did not abuse its discretion in ordering payment of attorney fees.  Costs on appeal are taxed one-half to each party.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**