**Donald W. MUSCH and Iva L. Musch, Appellants,**

v.

**Ronald L. FROST, Appellee.**

**No. 66077.**

Supreme Court of Iowa.

May 19, 1982.

---

Dale E. Goeke of Boveia Law Offices, Waverly, for appellants.

Max E. Kirk, of Ball, Kirk & Holm, P. C., Waterloo, for appellee.

Considered by UHLENHOPP, P. J., and ALLBEE, McGIVERIN, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

Plaintiffs Donald and Iva Musch have appealed from the amount of damages awarded them by the trial court in their action against the defendant, Ronald Frost, for breach of contract to purchase their house. They contend a valid contract existed which obligated the defendant to purchase the house, and as a result of his breach of that contract, they were entitled to recover consequential damages, *viz.*, those "which might reasonably have been contemplated by the parties." The matter was tried to the court, which determined no valid contract existed and alternatively, any damages recoverable were limited by the contract to specific performance or forfeiture. An award of $500, which represented the defendant's down payment on the contract, was entered in the plaintiffs' favor.

On appeal, the plaintiffs contend they should have been given a larger judgment, based upon their consequential damages. The defendant contends the plaintiffs have already been given too much because there was no enforceable contract. We agree with the defendant that there was no enforceable contract but, because he did not cross-appeal from the court's entry of the judgment of forfeiture, we do not have jurisdiction to disturb it on appeal. We therefore affirm the trial court.

The facts are not in dispute. Elaine Jackson, an apprentice salesman with Gibson Realty, observed a sign on the plaintiffs' property indicating that it was for sale by the owners. She stopped at the house and visited with them, and eventually they signed a "uniform listing contract" which employed her to sell the house for the sum of $62,900 cash. Thereafter, acting on behalf of the defendant, Gary Johnson, of Waterloo Metro Realty, prepared an offer of $62,000 for the house. Because the offer was conditioned on the sale of the defendant's home, the plaintiffs refused to accept it.

The defendant could not purchase the plaintiffs' house unless his house was sold or a loan on the plaintiffs' house could be secured. In light of this situation Johnson indicated to the defendant that his house could be subject to Waterloo Metro Realty's "guaranteed sales plan," whereby the agency would purchase its mortgage at a price approved by the defendant. Relying on this "plan," the defendant prepared another offer of $62,000 cash, which was subject to the following five conditions:

1. House and garage to be painted by seller to buyer's choice of color.
2. Downstairs bath to be hooked up and working.
3. Drapes stay.
4. Iron remover to remain and be installed and working.
5. Reserve water conditioner and fireplace tools.

Johnson and Jackson went to the plaintiffs' residence with this second offer. The plaintiffs, however, would not agree to the first two conditions. They went outside and showed Johnson that certain areas of the house just needed washing; the siding was only four-years-old and was "color-lock guaranteed" for fifteen years. They also indicated they would not pay for work on the downstairs bath; however, both realtors indicated they would split the cost for the plumbing. In the plaintiffs' presence, lines were drawn through the first two conditions by Johnson, and it was agreed he would take the agreement as changed back to the defendant and notify Jackson before midnight if the defendant did not approve it.

Johnson did not contact Jackson that night, nor did he ever inform the defendant that he had drawn lines through the first two conditions of the offer submitted to the plaintiffs. The defendant did not see the altered document until this litigation was started. Johnson had just told him, "Congratulations, you own an acreage." At that time, then, both parties believed they had a binding contract, although two separate documents were in existence: the defendant's offer with the first two conditions, and the offer without them. Each party believed the contract involved was the one less favorable to the other party.

It was the defendant's failure to obtain financing and not the plaintiffs' failure to comply with the first two conditions of his offer, however, which prompted the defendant to seek a release from the contract. Johnson had informed the defendant that he made a mistake, that the defendant's former house could not be sold by the "guaranteed sales plan." Thereafter, the defendant sent a notice to Waterloo Metro Realty requesting a release from his offer and return of his $500 deposit. His attorney advised the plaintiffs' attorney that the defendant wished to be relieved of the contract as he would not be able to get the "money out of [his] home that [he] originally thought [he] would . . . ."

In the meantime the plaintiffs had purchased another house. They immediately re-listed their former residence but were not able to sell it until over a year later. At that time they received only $60,000 in cash, and had included personal property worth $2500 in the transaction.

The trial court concluded on these facts that Johnson, as agent for the defendant, had no authority to delete the two conditions from the defendant's offer and therefore no valid contract existed between the parties. It added that "[e]ven assuming there was a valid agreement, . . . [t]he parties by the terms of the offer and acceptance limited the remedies available to the [plaintiffs] in the event of default by the [defendant] to specific performance or forfeiture . . . . [and] other remedies available in Iowa to a seller, namely termination and suit for damages for the breach and rescission, were excluded. . . ." It concluded forfeiture of the defendant's downpayment was the plaintiffs' only available remedy.

I. *Defendant's claim of no liability.*

Because of the apparent inconsistency in the trial court's ruling, it is difficult to ascertain the status of the parties on appeal. What the court *said* was that there was no enforceable contract; what it *did*, however, was to enter a judgment for the plaintiffs as though it were enforceable. The defendant did not cross-appeal from the judgment entered against him. Under these circumstances, while we agree with the defendant that there was no enforceable contract, we may not set aside the judgment; failure to appeal an adverse judgment defeats jurisdiction of the subject matter. *See Lutz v. Iowa Swine Export Corp.*, 300 N.W.2d 109, 110 (Iowa 1981); 2 A. Vestal & P. Willson, *Iowa Practice and*

*Procedure* § 54.01, at 389–90 (1974). We therefore affirm the award of $500.

II. *Plaintiffs' claim for consequential damages.*

 The issue remains whether the award of damages should be increased as the plaintiffs contend. We conclude, however, no amount of damages could have been awarded under the contract because it was unenforceable.

The rule is well settled that in a contract by offer and acceptance, the acceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. If there is any qualification attached which calls for further understanding or correspondence in order to determine the final meeting of the minds of the parties, the acceptance falls short of closing the contract.

*Shell Oil Company v. Kelinson*, 158 N.W.2d 724, 728 (Iowa 1968); *see* 1 A. Corbin, *Contracts* § 82, at 349–52 (1963).

Here, the acceptance did not conform to the offer in respect to the painting and the plumbing. Thus, there was no enforceable contract. The trial court did not err in denying consequential damages; its only error was in allowing damages at all.

AFFIRMED.