**IN THE COURT OF APPEALS OF IOWA**

No. 18-0527
Filed July 3, 2019

**IN THE MATTER OF THE ESTATE OF HELEN E. HOUSER, Deceased.**

**BONNIE FORBES,**
        Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Patrick R. Grady,
Judge.

A sibling appeals from an order concerning her mother's estate.
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

David Burbidge of Johnston, Stannard, Klesner Burbidge & Fitzgerald
P.L.C., Iowa City, for appellant.

John E. Beasley and Thomas E. Williams of Phelan, Tucker, Mullen,
Walker, Tucker & Gelman, L.L.P., Iowa City, for appellee Woodrow Houser.

Thomas E. Maxwell of Leff Law Firm, L.L.P., Iowa City, for appellee Estate.

Considered by Vaitheswaran, P.J., Doyle, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

A mother of four children died, leaving a significant estate to be distributed to her children under the terms of her will. In this second appeal, one of the siblings challenges the district court's (A) reduction of her share of the estate, (B) refusal to reduce a brother's share of the estate, (C) allocation of executor fees, and (D) refusal to order the payment of certain charges incurred for upkeep of estate assets.

## I.  *Background Facts and Proceedings*

Helen Houser died in 2012, and her will was admitted to probate. Her daughter Bonnie Forbes and son Lawrence Houser were named co-executors of the estate. Forbes was later removed as co-executor, a decision this court affirmed on appeal. *See In re Estate of Houser*, No. 15-1993, 2017 WL 363238, at *2 (Iowa Ct. App. Jan. 25, 2017).

In time, executor Lawrence Houser submitted a final report. He proposed a reduction of Forbes' distributive share by $57,622.69, which represented the increased value of an annuity the court previously ordered transferred to the estate. He also proposed a reduction of his brother Woodrow Houser's distributive share by $36,557.71, based on unpaid debts to their parents. Finally, he requested seventy percent of the statutory executor fees as well as extraordinary fees of $6000, with the remaining thirty percent of the ordinary fees going to Forbes for her initial work as co-executor.

Forbes objected to the following portions of the final report:

    a.  Reduction of [her] share of the estate related to the annuity.
    b.  Valuation of Woodrow Houser's debt to the estate.
    c.  Her executor fee.

    d. The executor fee of [Lawrence] Houser.
    e. Failure to include expenses for care of the estate property as
    an expense of the estate or a claim against the estate.

The district court (1) reduced Forbes' distributive share by $52,837.81 rather than the proposed $57,622.69, (2) declined to reduce Woodrow Houser's distributive share, (3) granted Forbes thirty-five percent of the executor fee rather than the thirty percent recommended by the executor, (4) granted Lawrence Houser sixty-five percent rather than seventy percent of the ordinary executor fee and extraordinary fees of $4500 rather than $6000, and (5) disallowed the charges incurred in maintaining assets of the estate.

Forbes appealed. The executor did not file a cross-appeal.

## II. *Analysis*

### A. *Reduction in Forbes' Distributive Share*

In an inventory report filed after Helen Houser's will was admitted to probate, then-executor Forbes listed an "[a]nnuity purchased by Decedent," with a "value at date of death" of $151,923. Forbes was listed as the beneficiary of the annuity.

Two of Forbes' siblings challenged the beneficiary designation. In a 2014 order, the district court found Forbes did not unduly influence Helen Houser to name her sole beneficiary but concluded Helen lacked the mental capacity to understand her actions. The court refused to "give[] any force and effect" to the beneficiary designation and ordered the annuity transferred to the estate. In the alternative, the court stated:

If the ownership of the . . . annuity has already been transferred to . . . Forbes, then . . . Forbes shall immediately deposit the sum of $151,923 into the estate, and the executor shall distribute that

amount pursuant to the terms of Decedent's Last Will and Testament.

Forbes transferred the specified amount to the estate.

Years later, when the final report was presented to the district court for approval, a different district court judge found the judge who filed the 2014 transfer order "apparently" was not aware Forbes actually received $158,865.87 from the annuity account and was also unaware that, by the time she transferred $151,923 to the estate, the "annuity had grown to $204,760.81." The court concluded:

> Though [Forbes] did not disobey the letter of [the judge's] order, …[the judge] was never made aware of important developments in how the . . . annuity had been handled and the fact it did not exist anymore. This is classic self-dealing that placed [Forbes] in a conflict of interest situation where her loyalty to her own economic position came into conflict with her duty to protect all the assets of the Estate.

The court reduced Forbes' distributive share by $52,837.81, the difference between the annuity's value at the time of transfer and the value at the time of Helen Houser's death.

On appeal, Forbes contends the "obligation to the estate related to the annuity was settled in this matter prior to consideration of the final report" and she complied with the court's order to "pay the estate $151,923.00, the value of the annuity on the Decedent's date of death." In her view, "[t]herefore, the trial court in the final hearing had no legal authority to modify anything about the annuity." In the alternative, she asserts the court erred in valuing the annuity. On our de novo review, we find the first issue dispositive. *See Estate of Randeris v. Randeris*, 523 N.W.2d 600, 604 (Iowa Ct. App. 1994) (setting forth standard of review).

Iowa Code section 633.36 (2017) states, "All orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those

who have appeared without notice." "The purpose of this statute is to allow a prompt appeal from those orders and rulings on probate matters during the administration of the estate rather than at the time of the final report." *In re Estate of Troester*, 331 N.W.2d 123, 126 (Iowa 1983). That said, "[T]he legislature by the enactment of section 633.36 did not intend to provide finality and thus make appealable those procedural rulings that are found in probate proceedings such as orders concerning motions to continue and applications for a hearing." *Id.*

The 2014 order, styled in part "order regarding disposition of annuity," was a final order. *See id.* at 125 ("[A] final judgment or decision is one that finally adjudicates the rights of the parties and prevents the court from placing the parties in their original position . . . ."); *see also Strawn v. Strawn*, No. 13-1433, 2014 WL 4629877, at *2 (Iowa Ct. App. Sept. 17, 2014) ("[B]y the operation of section 633.36 the district court's grant of partial summary judgment was a final decision and could be appealed as a matter of right."). As the caption indicates, the order "disposed of" the annuity by either requiring transfer of the account or a specified amount to the estate. Because the order was final, it was not subject to collateral attack. *See In re Myers' Estate*, 269 N.W.2d 127, 128 (Iowa 1978) ("[T]he fee orders . . . were final and appealable as a matter of right within 30 days . . . . However, appeal from those orders was not attempted until [more than thirty days later]. The appeal from them was thus untimely and we have no jurisdiction of it."); *Lovrien v. Fitzgerald*, 49 N.W.2d 845, 852 (Iowa 1951) ("The distribution to plaintiff, whether or not defective originally, and whether or not Margaret Fitzgerald might have challenged the accuracy of the appraisal or the alleged improper and incomplete description of the real estate, has been made and is a verity. It has stood as an order and

judgment of the probate court of Humboldt County without direct attack at any time, and was without even a collateral attack until the bringing of this action, about two years later. . . . Margaret Fitzgerald had notice and failed to act. The question cannot now be raised."); *In re Estate of Brehm*, No. 17-0339, 2017 WL 6513975, at *2 (Iowa Ct. App. Dec. 20, 2017) (concluding court lacked jurisdiction to revisit final order entered in probate several months before the order from which appeal was taken); *In re Guardianship of Seymour*, No. 09-1484, 2010 WL 4967989, at *2 (Iowa Ct. App. Dec. 8, 2010) (concluding order removing guardian and conservator was a final order that could not be challenged in an appeal from a later order). We reverse the portion of the district court's order reducing Forbes' distributive share by $52,837.81.

### *B.    Reduction of Woodrow Houser's Distributive Share*

Woodrow Houser borrowed a total of $92,600 from his parents between 1976 and 1989. He executed several promissory notes, four of which became an issue in the probate proceedings. They provided for repayment at specified interest rates ranging from 9 percent to 10.5 percent. Woodrow was eighty-one years old at the time of the hearing on the final report and had little recollection of the precise amounts paid or owing on each of the loans.

As noted, the executor proposed a $36,557.71 reduction in Woodrow's distributive share to reflect principal amounts of $74,830 still owing on the notes. The sum was in addition to a reduction of $38,272.29 drawn from a savings account. The record is unclear about the source of the savings account funds.

Forbes objected to the amount of the reduction. She claimed Woodrow actually owed $307,390 in principal and interest, and the entire amount was subject to set off against Woodrow's distributive share.

The district court refused to reduce Woodrow's distributive share by any amount. The court reasoned that the parents attempted to collect on two of the notes, the parties reached a settlement of those claims, and neither Woodrow's parents nor Forbes took legal action to enforce the other two notes. The court further reasoned that the applicable statute of limitations and the principle of estoppel by acquiescence would serve as defenses to any belated collection attempts on the remaining two notes.

On appeal, Forbes argues Iowa Code section 633.471 requires a set-off against his distributive share of amounts Woodrow Houser owed his parents. In her view, the statutory prescriptive overrides the defenses cited by the district court. Woodrow counters that Forbes cannot rely on section 633.471 because she never cited it in the district court. That may well be true, but Forbes vociferously argued for a set-off in the district court, an argument that implicated the substance of section 633.471. We conclude she preserved error. We proceed to the merits. *See Randeri*s, 523 N.W.2d at 605.

Section 633.471 provides for a right of retainer. *Id.* Specifically, "[w]hen a distributee of an estate is indebted to the estate, the executor is authorized to treat the amount of the debt as a setoff against the property of the estate which the distributee is entitled to receive." *Id.* (citing Iowa Code § 633.471 (1993)). The right does not apply to disputed claims. *Id.*

Woodrow Houser did not dispute the existence of the loans. He simply argued the $307,390 set-off amount advocated by Forbes was excessive and the lower set-off amount proposed by the executor was more appropriate. Specifically, in a brief in support of the final report, his attorney stated:

> Although Woodrow disputes the claim that any monies are due on the four (4) promissory notes, he did not object to the final report in order to conclude and close his mother's estate. Lawrence Houser, executor of Helen's estate, has taken the position that Woodrow's portion of Helen's estate should be reduced by the principal balance remaining on these promissory notes, $73,830.00, less the $38,272.29 in University of Iowa Community Credit Union ("UICCU") savings account (xx351).

Now, with the benefit of an order providing for no reduction in his distributive share, Woodrow takes a different position. We are not persuaded Woodrow can backtrack from the position he took in the district court. *See Clark v. Estate of Rice*, 653 N.W.2d 166, 172 (Iowa 2002). Having agreed to a $36,557.71 reduction in his distributive share, we believe he is bound by that concession.

But, even if Woodrow is not bound, we are persuaded the executor's proposal to reduce Woodrow's share by the principal amounts of the notes is more equitable than forgiveness of the loans in their entirety. The executor's stance comports with Helen Houser's expressed testamentary intent to reduce the distributive shares of her children by any indebtedness owed to her. At the same time, his position acknowledges the passage of decades since the loans were obtained and the inequity of attempting to collect large interest accruals on largely unsubstantiated principal balances.

We reverse the portion of the district court order declining to reduce Woodrow's distributive share by any amount. We remand for entry of an order

reducing his distributive share by $36,557.71 in addition to the $38,272.29 reduction.

### C. Executors' Fees

Forbes next contends she should have been "granted a larger percentage of the fee and extraordinary fees." The executor counters that the district court should have awarded him seventy percent of the ordinary fees as he proposed, rather than reducing the percentage to sixty-five. He does not challenge the court's reduction of extraordinary fees from $6000 to $4500.

> What constitutes reasonable fees depends upon a host of factors, including the competence and efficiency exercised in the estate, size of the estate, actual time devoted to the estate, nature and difficulty of the services performed, fee customarily charged for similar services, results obtained, and experience of the attorney or executor.

*Randeris*, 523 N.W.2d at 607. The determination of whether proposed fees are reasonable is a "discretionary decision." *Id.*

The district court thoroughly analyzed the fee issue before awarding Forbes thirty-five percent of the ordinary fees:

> [T]he Court will apportion executor fees, a task made difficult by the length of time the Estate was open and the level of conflict between Bonnie and her siblings. Often, a fiduciary may receive half their fee when the probate inventory is filed. *See* [Iowa] Ct. R. 7.2(4). That may not mean that half the work has been completed depending on a number of factors. Here, the inventory was filed before Lawrence was added as co-executor in December of 2014. However, five years of conflict have ensued since the inventory was filed. Very little was accomplished over the next ten months until after Bonnie was removed as co-executor. Then, Lawrence, who lives in Illinois, arranged for auctions and real estate sales as well as participated in hearings to address objections. He has clearly performed more than half of the work . . . .

We discern no abuse of discretion in the court's decision to limit Forbes' award to thirty-five percent.

We turn to the executor's request for seventy percent of the ordinary fees. In the absence of a cross-appeal, we are not at liberty to grant his request. *See Musch v. Frost*, 319 N.W.2d 286, 287 (Iowa 1982).

*D.     Costs of Estate Management*

Forbes' son-in-law, son, and husband helped maintain two homes associated with the estate. All three sought reimbursement for their services. The district court found "the amounts charged to be reasonable" but disallowed the charges on the ground the relatives had "no right to" submit their claims after Forbes was removed as co-executor and executor Lawrence Houser did not waive his right to claim "the protection of the limitations on these claims."

On appeal, Forbes argues the district court should not have refused payment of the charges. The executor responds that the claims were time-barred by Iowa Code section 633.410(1).

Section 633.410(1) states:

> All claims against a decedent's estate, other than charges . . . are forever barred against the estate . . . unless filed with the clerk within the later to occur of four months after the date of the second publication of the notice to creditors or, as to each claimant whose identity is reasonably ascertainable, one month after service of notice by ordinary mail to the claimant's last known address.

By its terms, the provision does not apply to "charges." "Charges" "include[] costs of administration." Iowa Code § 633.3(4). "Costs of administration are cared for in a different manner." *In re Cory's Estate*, 184 N.W.2d 693, 696 (Iowa 1971). The reason is clear:

It is not necessary for their payment that they be filed as a claim or debt against it since the obvious purpose of section 633.410 is to provide the personal representative with notice concerning extent and nature of claims outstanding against the estate he administers in order to enable him to effect a prompt and orderly settlement thereof. When charges are made by the estate or someone entitled to bind the estate, such notice to the personal representative would be superfluous and we will not assume the legislature intended to burden the fiduciary with the necessity of giving notice to himself of that concerning which he already has or should have actual notice.

*Id.* "Those charges incurred during administration must be submitted and approved by the probate court after notice and hearing unless waived." *Id.*

Forbes' son-in-law, son, and husband submitted their charges before hearing on the final report. All three testified at the hearing and were subject to cross-examination. Forbes' son-in-law submitted a charge of $775.84 for work performed between 2012 and 2015. He testified he "helped mow, do snow removal, check the house, make sure the mechanicals were working, put up snow fence, take it down." Forbes' son submitted a charge of $1495.96 for similar work performed between 2012 and 2015. Forbes' husband submitted a charge of $8381.70 for work performed between 2012 and 2015. As noted, the district court found the charges reasonable.

We conclude the "claims" filed by Forbes' son-in-law, son, and husband were in fact charges not subject to the limitations period set forth in section 633.410. Because they were deemed reasonable following notice and a hearing, they should have been paid from the estate as costs of administration. We reverse the denial of the requests for reimbursement and remand for payment of the charges.

### *III.* *Disposition*

We affirm the portion of the district court order awarding Forbes thirty-five percent of the ordinary executor fee and Lawrence Houser sixty-five percent of the fee. We reverse the portion of the order reducing Forbes' distributive share by $52,837.81 and remand for entry of an order increasing her distributive share by that amount. We reverse the portion of the order declining to reduce Woodrow Houser's distributive share by amounts owing on promissory notes and remand for entry of an order reducing his distributive share by $36,557.71 in addition to the reduction of $38,272.29. We reverse the denial of the charges submitted by Forbes' son-in-law, son, and husband and remand for entry of an order requiring the executor to pay the enumerated charges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**