# IN THE SUPREME COURT OF IOWA

No. 10 / 06–1333

Filed August 8, 2008

MARC A. WALLACE, GREGORY A. WELLS,
SHANNON BOSWELL, MIKE MURRAY,
GAYLE J. MURRAY, KATHLEEN L. GINGERICH,
TRACY LYNCH, and SCOTT D. NEAL,

Appellants,

vs.

DES MOINES INDEPENDENT COMMUNITY
SCHOOL DISTRICT BOARD OF DIRECTORS,

Appellee.

---

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Taxpayers appeal district court summary judgment in favor of the school district. **AFFIRMED.**

Bruce E. Johnson of Cutler Law Firm, P.C., West Des Moines, for appellants.

Andrew J. Bracken of Ahlers & Cooney, P.C., Des Moines, for appellee.

**STREIT**, **Justice**.

Several taxpayers filed a certiorari action challenging the Des Moines School Board's decision to close certain schools and reappropriate resources to other needs. The district court granted the Board's motion for summary judgment finding certiorari was not an available remedy to the taxpayers because the Board's action was not judicial or quasi-judicial. We affirm.

### I.      Facts and Prior Proceedings.

In 1998, the Iowa legislature created Iowa Code chapter 422E, which permitted the imposition of a local option sales tax for school infrastructure improvements upon local voter approval. Shortly after the adoption of this legislation, the various school districts in Polk County, including the Des Moines School District, adopted separate resolutions to submit a local option sales tax referendum to the voters of Polk County. The county held a public referendum in March 1999, but the local option sales tax for schools in Polk County was narrowly defeated.

In July 1999, the Board of Directors for the Des Moines School District ("Board") adopted a resolution requesting the Polk County Board of Supervisors to once again submit a ballot initiative to the voters for the imposition of a local option sales tax for school infrastructure purposes. After obtaining community input, the Board adopted a ten-year plan specifying needed improvements to each facility within the school district with the improvements being funded by revenue from such a tax. The plan noted the cost of improvements exceeded the projected revenue from the local option sales tax and that the plan was subject to modification based on program and demographic changes.

In November 1999, a proposal to impose a 1% local option sales tax was presented to Polk County voters. The measure indicated revenue

would be spent on school infrastructure as defined in section 422E.1 and as specified by each infrastructure project plan for each school district located within the county. The proposal passed, and the Board began making improvements to the Des Moines district's facilities with adjustments to the plan.

By 2004, the Board realized the actual revenues from the local option sales tax were short of projections. Additionally, building costs since 1999 had escalated, and the district's allocation of the collected local option sales tax revenues was reduced due to a decline in public school enrollment in Des Moines. Consequently, on July 12, 2005, the Board modified the ten-year plan by deciding to close four elementary schools and sell a central facility that provided advanced secondary education and technical training courses. The modification included additional spending on new facilities that was not part of the original plan. The Board also approved hiring a construction firm to create a management plan in connection with the infrastructure projects. This expense was not specified in the original plan either.

The plaintiffs are Des Moines residents, taxpayers, and parents of children they claim are affected and aggrieved by the Board's July 12 decision ("taxpayers"). In August 2005, the taxpayers filed a petition for writ of certiorari challenging the Board's decision to modify the original plan for school infrastructure improvements. They claimed the Board acted illegally and asked that the Board's July 12 decision "be annulled and decreed void."

The Board moved for summary judgment. It claimed allocation of resources by a local school board is a legislative decision and not subject to review by certiorari. The Board contended the taxpayers' proper

remedy was to appeal to the Iowa Department of Education, which the taxpayers had done.[1]

The district court granted the Board's motion for summary judgment. It determined the Board's actions did not involve judicial functions subject to certiorari review. Alternatively, the district court found even if certiorari was appropriate, the taxpayers failed to prove the Board exceeded its jurisdiction or acted illegally. The taxpayers appealed. For the reasons that follow, we affirm.

## II. Scope of Review.

We review a district court decision granting or denying a motion for summary judgment for correction of errors at law. Iowa R. App. P. 6.4. A matter may be resolved on summary judgment if the record reveals only a conflict concerning the legal consequences of undisputed facts. *City of Fairfield v. Harper Drilling Co.*, 692 N.W.2d 681, 681 (Iowa 2005). The moving party is entitled to a judgment as a matter of law "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Iowa R. Civ. P. 1.981(3). An issue of fact is "material" only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law. *Junkins v. Branstad*, 421 N.W.2d 130, 132 (Iowa 1988). The requirement of a "genuine" issue of fact means the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In a motion for summary judgment, the non-moving party enjoys the benefit of "every

---

[1]On the day they filed their petition for certiorari, the taxpayers also filed an appeal to the Iowa Department of Education pursuant to Iowa Code section 290.1. The Department ruled in favor of the Board in May 2006. The taxpayers' appeal of the agency decision pursuant to Iowa Code section 17A.19 is currently pending in the district court for Polk County.

legitimate inference that [could] be reasonably deduced from the record." *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001).

### III. Merits.

The issue before us is whether the taxpayers may challenge the Board's actions in a certiorari action. Certiorari is an "extraordinary remedy." *Hohl v. Bd. of Educ.*, 250 Iowa 502, 509, 94 N.W.2d 787, 791 (1959). It "is the method for bringing the record of an inferior tribunal before the court for the purpose of ascertaining whether the inferior tribunal or body had jurisdiction and whether its proceedings were authorized." *Id.* at 508, 94 N.W.2d at 791; *see also* Iowa R. Civ. P. 1.1403 (stating "relief by way of certiorari shall be strictly limited to questions of jurisdiction or illegality of the act complained of, unless otherwise specially provided by statute"). Iowa Rule of Civil Procedure 1.1401 describes when a writ of certiorari may issue:

> A writ of certiorari shall only be granted when specifically authorized by statute; or where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded proper jurisdiction or otherwise acted illegally.

The taxpayers do not allege any statutory authorization for the issuance of a writ in the instant case. Thus, their claim can only survive if the Board was exercising "judicial functions" when it voted to amend its ten-year plan on July 12.

We do not construe "judicial functions" in a strict or technical sense. *Hoefer v. Sioux City Cmty. Sch. Dist.*, 375 N.W.2d 222, 224 (Iowa 1985). Therefore, the action of the Board need only be quasi-judicial to support a certiorari proceeding. *Id.* We consider three factors to determine whether an action is judicial or quasi-judicial in nature: (1) whether " 'the questioned act involves a proceeding in which notice and

an opportunity to be heard are required' "; (2) whether " 'a determination of rights of parties is made which requires the exercise of discretion in finding facts and applying the law thereto' "; or (3) whether " 'the challenged act goes to the determination of some right the protection of which is the peculiar office of the courts.' " *Id.* at 224–25 (quoting *Buechele v. Ray*, 219 N.W.2d 679, 681 (Iowa 1974)). " '[Q]uasi ordinarily means superficially resembling but intrinsically different. Therefore, when an activity appears to be judicial in nature, but in reality is not, it is termed quasi-judicial.' " *Id.* at 225 (quoting *Buechele*, 219 N.W.2d at 681). However, " 'the mere exercise of judgment or discretion is not alone sufficient to characterize an act as quasi-judicial.' " *Id.* (quoting *Buechele*, 219 N.W.2d at 681).

There is a tendency to broaden the scope of the writ where no other form of redress is provided and "substantial justice will not be done" unless such relief is granted. *Hohl*, 250 Iowa at 509, 94 N.W.2d at 791–92; *see also Dunphy v. City Council*, 256 N.W.2d 913, 918 (Iowa 1977) (stating certiorari " 'is especially applicable in cases where inferior boards, officers, or tribunals exceed their authority and no method of appeal has been provided by statute' " (quoting *Bremer County v. Walstead*, 130 Iowa 164, 169, 106 N.W. 352, 354 (1906))). However, a "writ shall not be denied or annulled because plaintiff has another plain, speedy, or adequate remedy." Iowa R. Civ. P. 1.1403. With these principles in mind, we determine whether the Board's action in this case is judicial or quasi-judicial.

A. **Notice and Opportunity to be Heard.** The taxpayers do not identify any entitlement to notice or an opportunity to be heard. They are challenging a decision of the Board as to how to appropriate the local option sales tax revenues and more specifically, the decision to close

certain schools. The only source of "notice and opportunity to be heard" comes from Iowa Administrative Code rules 281—19.1-19.3. There, the Iowa Department of Education created rules a school district must follow to involve the public in decisions to close a school. While school boards have the discretion to determine the number of schools it shall operate within their districts, they are required to provide "public notice" and encourage "public consideration" and "public involvement" in any decision to close a school. Iowa Admin. Code r. 281—19.1. When making such a decision, the board is required to inform the community "in a manner reasonably calculated to apprise the public of that information," "seek public input in all study and planning steps involved in making the decision," "promote open and frank public discussion of the facts and issues involved," and "make its final decision in an open meeting." *Id.* § 281–19.2. However, this procedure is not akin to procedural due process. These rules do not guarantee individuals, including the taxpayers, of an individual right to be heard during the Board's consideration of the issues.

**B. Determination of Rights.** Likewise, the taxpayers do not identify any right the determination of which requires any fact finding or application of law by the Board or any right the determination of which is traditionally a function of the courts. The only right at issue is the right of school-age children to attend a public school. The decision of the Board did not jeopardize any student's right to receive an education. Rather, some students will be attending a different school as a result. Determining where any given student will attend public schools is a legislative decision that only a school board is authorized to make. *Howell Sch. Dist. No. 9 v. Hubbart*, 246 Iowa 1265, 1274–75, 70 N.W.2d 531, 536 (1955). Similarly, we have held appropriation of money is a

legislative function left up to the discretion of the political system. *Welden v. Ray*, 229 N.W.2d 706, 709 (Iowa 1975).

We think it is inappropriate to classify the Board's decision to modify the ten-year plan as a judicial or quasi-judicial function. We note the taxpayers are not without a remedy. In addition to appealing to the Iowa Department of Education, the taxpayers had the option to seek injunctive relief. Taxpayers have a vested interest in ensuring their tax dollars are lawfully spent. *Ghegan & Ghegan, Inc. v. Weiss*, 991 S.W.2d 536, 539 (Ark. 1999). Thus, taxpayers have the right to bring an action to enjoin the illegal expenditure of public funds. *Erickson v. City of Cedar Rapids*, 193 Iowa 109, 199, 185 N.W. 46, 51 (Iowa 1921) (stating "it is elemental that a taxpayer can restrain the illegal acts of public officials"); *see also E. Mo. Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43, 46 (Mo. 1989) ("The right of a taxpayer, on behalf of himself and other taxpayers similarly situated, to bring an action to enjoin the illegal expenditure of public funds cannot be questioned."). However, to have standing, a taxpayer must demonstrate the expenditure is illegal, rather than merely unwise or indiscreet. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007).

Regardless of whether the taxpayers filed certiorari or sought an injunction, their claim must fail because they failed to prove the Board acted illegally. Contrary to the taxpayers' assertions, the Board's initial ten-year plan was not set in stone. The plan made clear it was preliminary and subject to change. The "Vision" section of the plan included the following statement:

> The money received from the local sales and service tax will be used to provide funds to build and furnish new school buildings or additions to school buildings; to improve, remodel, furnish and repair school buildings; to purchase

and improve sites for school buildings or additions to school buildings; to pay the costs of emergency repairs; to respond to natural disaster such as fire, wind damage, flood, unanticipated mechanical, plumbing, structural, roof, or electrical systems failure, environmental remediation, *or to respond to changes in demographics that require unanticipated construction, additions, or improvements to school buildings, or the construction of new school buildings.*

(Emphasis added.) This statement of the proposed use of the tax revenue was consistent with the authorized use of local option sales tax revenue. *See* Iowa Code § 422E.1(3) (1999).

While the plan identified the needs of all of the then-existing schools in the district, it noted the plan was subject to budget constraints, demographic changes, and program needs. For example, the "Vision" statement said:

> While the community desires detailed information regarding the District's 10-Year Facility Plan, it also recognizes the need to modify the plan when necessary to respond to change in enrollments and program needs. School mergers, including possibly creating some kindergarten through 8th grade schools, may occur during the 10-Year Plan period. Mergers will only be undertaken with extensive public input.

Additionally, the plan emphasized modifications would be necessary because the projected total costs to renovate all of the existing buildings exceeded the projected revenues from the local-option sales tax by 19 percent. Unfortunately, the tax revenues generated were even less than anticipated. We are not equipped to determine whether the Board's modifications to the plan were wise or fair. We can only say the changes were permissible in light of the fact the plan forecasted and allowed for adjustment and modification.

The taxpayers argue Iowa law prohibits the Board from modifying the plan absent voter approval. However, the taxpayers rely on a statutory amendment which was not in existence when the local option

sales tax was approved. In 2003, the legislature amended chapter 422E (now chapter 423E) to require voter approval before a school district could change the use of the revenue generated from a local option sales tax. *See* Iowa Code § 423E.2(4)(*a*) (2003). The amendment took effect May 30, 2003. 2003 Iowa Acts ch. 157, § 11. There is no indication the legislature intended the amendment to be applied retroactively. *See* Iowa Code § 4.5 (stating a "statute is presumed to be prospective in its operation unless expressly made retrospective"). Moreover, even if the amendment were applicable, there was no change in use in the revenues because the plan anticipated modification throughout the ten years the tax was in effect.

In sum, the taxpayers have failed to prove the Board's actions on July 12 were "judicial" or "quasi-judicial." Consequently, their certiorari action must fail. While we sympathize with the taxpayers and their desire to maintain their neighborhood schools, the Board has the authority to determine the number and location of schools and appropriate the necessary resources to maintain them. The taxpayers failed to demonstrate the Board acted illegally or exceeded its jurisdiction.

**IV. Conclusion.**

The district court properly granted the Board's motion for summary judgment. The taxpayers failed to prove the Board's actions were reviewable in a certiorari action.

**AFFIRMED.**

All justices concur except Baker and Appel, JJ., who take no part.