# IN THE COURT OF APPEALS OF IOWA

No. 17-1674
Filed August 15, 2018

**JIM JAMISON d/b/a J&S AG SERVICES,**
    Plaintiff-Appellant,

**vs.**

**DARRELL J. CODDINGTON and WENDY CODDINGTON,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Wayne County, Dustria A. Relph, Judge.

Plaintiff-appellant appeals the district court's grant of summary judgment in favor of the defendants-appellees. **AFFIRMED.**

David L. Leitner of Leitner Law Office, West Des Moines, for appellant.

Verle W. Norris, Corydon, for appellees.

Considered by Vogel, P.J., Doyle, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Plaintiff Jim Jamison d/b/a J & S Ag Services (Jamison) appeals from the district court's grant of defendants Darrell and Wendy Coddington's motion for summary judgment.[1] After our review of the record in this case, we find the district court properly found no dispute of material fact, correctly applied the law, and did not err in granting the Coddingtons' motion for summary judgment.

## I. Factual and procedural background.

In April 2016, Jamison filed a petition against Coddington alleging that in 2014 Coddington entered into an oral contract with him for the purchase of soybean seed and for Jamison to custom spray a chemical application to the crop, including purchase of the applied chemicals, but that Coddington then failed to pay. Coddington filed an answer denying Jamison's claims, asserting affirmative defenses as well as a counterclaim for abuse of process.[2] Jamison and Coddington were deposed and written discovery exchanged. On February 20, 2017, the trial court granted Jamison's motion to amend the petition to add Darrell's spouse, Wendy, as an additional defendant, alleging she was an equal owner of the farming operation and also liable to Jamison. Wendy filed her answer denying Jamison's claims.

On August 7, the Coddingtons filed their motion for summary judgment with an attached statement of undisputed facts supported by the depositions and Coddington's affidavit. Jamison filed a resistance with an attached statement of

---

[1] "Coddington" refers to Darrell Coddington only. "Coddingtons" refers to both Darrell Coddington and Wendy Coddington.
[2] After the trial court's ruling granting defendants' motion for summary judgment, Coddington dismissed his counterclaim.

facts alleged to be in dispute, relying solely on his and Coddington's depositions. He did not submit an affidavit with his resistance.

Following a hearing on September 5, based upon the depositions and Coddington's affidavit, the trial court found the following undisputed facts: Jamison is in the business of selling seed to farmers as well as selling chemicals and applying them to farmland. In the spring of 2014, Coddington entered into an agreement with John Trihus (Trihus) for Trihus to custom farm that growing season certain land owned by Coddington near Lineville, Iowa. Trihus was to provide all crop inputs and all labor and equipment to plant and tend the soybean crop.

Trihus then discussed with Jamison the need for soybean seed, advising Jamison he was planting 1200 acres. Jamison ordered 1300 units of soybean seed. Trihus and Coddington at various times picked up a total of 800 units of soybean seed from Jamison's storage facility during the planting season, at $60 per unit, for a total cost of $48,000.00. Trihus also arranged for Jamison to spray the soybean crop Trihus was custom farming on Coddington's land. The 2014 soybean crop was harvested that fall. In October, Coddington settled up with Trihus for the cost of the crop inputs Trihus had arranged to purchase from Jamison.

Neither of the Coddingtons signed any written agreement, invoice, or other document to support what Jamison claims was their purchase of crop inputs from him. Jamison did not provide the Coddingtons any receipts, delivery tickets, or invoices. He did not discuss with either of the Coddingtons the purchase of seed, the cost of $60 per bag of seed, or the act of chemically spraying the farmland. In January 2015, Jamison telephoned Coddington to demand payment for the

soybean seed, chemicals, and application. Wendy Coddington was neither an operator of the land custom farmed by Trihus in 2014, nor did she have any interaction with Jamison, Trihus, or any other person regarding crop inputs and custom farming in 2014.

The trial court then proceeded to address the two fact issues that were disputed. The first was whether, during a discussion on July 15, 2014, Coddington told Jamison to send him an invoice for crop inputs. The court determined, "Even though this allegation is in dispute, the court finds whether or not Jamison and Coddington had this conversation is not a material fact because the Statute of Frauds applies to this matter and Jamison has produced no writing to support the existence of a contract between the parties." The court found that the seed and chemicals were "goods" covered by Iowa Code section 554.2105(1) (2016)—part of Iowa's Uniform Commercial Code (UCC)—and because the claimed contract exceeded $500, the statute of frauds in section 554.2201(1) required it to be in writing.

The court then addressed Jamison's argument that the statute of frauds requirement of a written contract did not apply because Coddington received and accepted the seed and chemicals. *See* Iowa Code § 554.2201(3)(c). The court, citing Iowa Code section 554.2606, determined that such acceptance had to be by the "buyer," as defined in Iowa Code § 554.2103(1)(a). The court found:

> In this case, there is no evidence in the record to support a finding that Coddington was the buyer of Jamison's goods. Coddington did not have any discussion with Jamison regarding the purchase of the crop inputs, and there is no evidence of mutual assent or agreement between the parties. Further, Jamison clearly acknowledged in his deposition that Trihus purchased the soybean seeds and arranged for the soybean crop to be sprayed.

The court concluded that whether Coddington told Jamison to send him an invoice for the cost of crop inputs was not an issue of material fact because it was irrelevant and insufficient to prove the existence of an enforceable contract under the statute of frauds.

The court next addressed the second contested factual issue—whether a partnership or agency agreement existed between Trihus and Coddington so that Trihus's agreements with Jamison contractually bound Coddington. The trial court decided that "besides Jamison's allegation, there is simply no evidence to support a finding that a partnership or other agency relationship ever existed between Coddington and Trihus."

The trial court granted the Coddingtons' motion for summary judgment and dismissed Jamison's amended petition. Jamison then filed a motion for reconsideration and new trial, which he supported with his affidavit raising additional facts.[3] The Coddingtons resisted, and the court denied Jamison's motion. Jamison timely filed a notice of appeal.

## II.  Standard of review.

"We review a district court decision granting or denying a motion for summary judgment for correction of errors at law." *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008). "A matter may be

---

[3] We note that Jamison's affidavit, dated and filed on September 27, 2017, was not filed with his original resistance to the summary judgment motion. Iowa Rule of Civil Procedure 1.981(3) provides: "If affidavits supporting the resistance are filed, they must be filed with the resistance." The affidavit was not timely filed pursuant to the rule. Jamison also did not comply with Iowa Rule of Civil Procedure 1.981(5) regarding supplementing affidavits. The facts asserted in Jamison's affidavit filed with his motion to reconsider cannot be considered by the trial court or this court on appeal as generating a dispute of fact.

resolved on summary judgment if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Id.*; *see also Garvis v. Scholten*, 492 N.W.2d 402, 403 (Iowa 1992). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "The moving party has the burden of showing the nonexistence of a material fact." *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005). "An issue of fact is 'material' only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law." *Wallace*, 754 N.W.2d at 857. An issue is "genuine" if the evidence in the record "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Rants v. Vilsack*, 684 N.W.2d 193, 199 (Iowa 2004) (quoting *Junkins v. Branstad,* 421 N.W.2d 130, 132–33 (Iowa 1988)). "We examine the record in a light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden." *Id.* "Speculation is not sufficient to generate a genuine issue of fact." *Hlubek*, 701 N.W.2d at 96.

## III. Discussion.

Again relying substantially on his untimely affidavit, Jamison argues there are disputed facts that prevented the trial court from granting the Coddingtons' motion for summary judgment. Jamison first contends Trihus was either the Coddingtons' employee—"their hired hand"—or their partner in the 2014 farming operation and acting as the Coddingtons' agent when he entered into oral contracts with Jamison for the seed and to chemically spray the fields.

Alternatively, Jamison contends that Coddington became responsible to pay Jamison when he picked up part of the soybean seed from Jamison's storage facility and directed Jamison during the spraying process. Lastly, Jamison argues that in July 2014 Coddington accepted responsibility to pay when Coddington requested Jamison to send him the billing statement for soybean seed.

In his deposition, Jamison testified that he had a discussion on July 15, 2014, with Coddington where Coddington "wanted to know what his seed bill was and he told me to bring the seed bill to him because he didn't want any issues with John Trihus." Additional testimony followed:

> Q. Did you ever have any agreement with Mr. Coddington to furnish 800 bags of seed to him? A. Not Mr. Coddington.
> Q. Did you have any agreement with Mr. Coddington that he would pay you $60 per bag for seed? A. Not Mr. Coddington. I did his partner.
> Q. Who is his partner? A. John Trihus.
> Q. Did you have a conversation with Mr. Trihus about furnishing seed to him? A. Probably the end of February, first of March.
> Q. Of what year? A. 2014.
> Q. Where did that conversation take place? A. In my shed.
> Q. And what was the gist of that conversation? A. That him and [Coddington] was going to farm some ground and wanted to know if they could get fall terms and if I would carry him on the— carry them on the spraying until fall also.

Later in Jamison's deposition, he testified:

> Q. What ground was sprayed? A. Coddington and Trihus's soybean acres post emerge.
> Q. When you say Coddington and Trihus's soybean acres, why do you refer to it as Coddington and Trihus? A. Because they was supposed to be putting it in together.
> Q. How do you know that? A. I was told by both of them.
> Q. Well, who told you that? A. Both of them.
> Q. When? A. John [Trihus] told me that in the spring and Darrell Coddington told me that evening in Circle A Ranch driveway when we was talking to bring the bills to him.

Upon our review of the depositions and Coddington's affidavit, the above is the only information Jamison presented which could conceivably create a fact dispute whether Trihus and Coddington were partners or had an employer-employee relationship.

> A partnership has four elements: (1) an intent by the parties to associate as partners; (2) a business; (3) earning of profits; and (4) co-ownership of profits, property, and control. *Chariton Feed & Grain, Inc. v. Harder,* 369 N.W.2d 777, 785 (Iowa 1985). The crucial test of a partnership is an intent to associate as partners. *Id.* This element need not be in writing, but it may be inferred from the conduct of the parties and the circumstances surrounding the transactions. *Thorp Credit, Inc. v. Wuchter,* 412 N.W.2d 641, 647 (Iowa Ct. App.1987).

*Fettkether v. Fettkether*, No. 01-0736, 2002 WL 31425212, at *1 (Iowa Ct. App. Oct. 30, 2002). In *Chariton Feed and Grain*, although that case involved a written agreement, the supreme court quoted a "leading" case on farming-type arrangements:

> If a partnership existed, it might be possible for the tenant, within the scope of the partnership, to purchase property and make the owner of the land responsible therefor in an amount largely in excess of the rent, and each might be responsible for the torts of the other committed within the scope of the agency. The courts hold quite generally that there are obvious reasons for holding that farm contracts or agricultural agreements, by which the owner of land contracts with another that such land shall be occupied and cultivated by the latter, each party furnishing a certain portion of the seed, implements, *and stock,* and that the products shall be divided at the end of a given term, or sold and the proceeds divided, shall not be construed as creating a partnership between the parties. Such agreements are common in this country, and are usually informal in their character, often resting in parol. In the *absence of stipulations or evidence clearly manifesting a contrary purpose, it will not be presumed that the parties to such an agreement intended to assume the important and intricate responsibility of partners, or to incur the inconveniences and dangers frequently incident to that relation.*

369 N.W.2d 777, 783–84 (Iowa 1985) (quoting *Florence v. Fox*, 188 N.W. 966, 967-68 (Iowa 1922)).

Jamison's evidence does not create a fact dispute whether Coddington and Trihus had a partnership. According to Jamison, neither Coddington nor Trihus used the word partner or partnership. Jamison imputed the existence of a partnership from the conversations, but the evidence available to decide the summary judgment did not clearly manifest the creation of a partnership so as to generate a fact issue that Coddington and Trihus had established a partnership.

Jamison likewise did not present any evidence to establish a fact dispute whether Trihus was the Coddingtons' employee. As noted in *Fox*, there are a number of different relationships that exist regarding farming. On our review of the depositions and Coddington's affidavit, they do not provide Jamison with disputed facts to generate an issue the Trihus was an employee. Since Trihus was neither Coddingtons' employee nor partner, he could not bind Coddingtons to a contract for the seed or spray application of chemicals, and the Coddingtons are not liable to Jamison for payment.

Next, Jamison argues that Coddington was a buyer and his acceptance of the "goods"—the seed and chemical application—takes the contract out of the statute of frauds and permits an oral contract. The district court found that Coddington was not a buyer under the UCC. Since the district court properly found that Trihus was not the Coddingtons' employee or partner, even if Coddington had picked up some of the seed or advised Jamison in the chemical application, he did not meet the UCC definition of buyer. Since Coddington was not the buyer, his actions do not take this situation outside the statute of frauds. Jamison's claim of

an oral contract is not permitted, and he cannot establish that the Coddingtons were responsible to pay.[4]

Finally, based upon the foregoing, we agree with the district court that Coddington's request that Jamison send him an invoice for the cost of crop inputs was not material to prove a contract between Jamison and Coddington because it was irrelevant and insufficient to prove the existence of an enforceable—that is a written—contract under the statute of frauds.

## IV.    Conclusion.

The district court correctly applied the law, determined there was no dispute of material fact, and granted the Coddingtons' motion for summary judgment.

**AFFIRMED.**

---

[4] In his appellate brief, Jamison also asserts that the Coddingtons were unjustly enriched since they received the profit of the crop for which Jamison provided the seed and applied chemicals.  However, we note that Jamison did not plead a claim of unjust enrichment in his petition.