# IN THE COURT OF APPEALS OF IOWA

No. 19-0828
Filed July 22, 2020

**DECORAH GENEALOGY ASSOCIATION,**
     Plaintiff-Appellant,

**vs.**

**ROGER L. BERGAN,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Winneshiek County, Richard D. Stochl (summary judgment) and Alan T. Heavens (final disposition), Judges.

A nonprofit association appeals the dismissal of its conversion claim against a board member of a rival association. **AFFIRMED.**

Karl G. Knudson, Decorah, for appellant.

Andrew P. Nelson of Meyer, Lorentzen & Nelson, Decorah, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

Decorah Genealogy Association (DGA) appeals the dismissal of its conversion claim against Roger Bergan. We affirm.

**I. Facts and Prior Proceedings**

This case stems from hostilities between two once-cooperative nonprofit organizations, DGA and the Winneshiek County Historical Society (WCHS), both of which are committed to preserving local history. For several years, WCHS operated out of the Luther College library. Eventually, the college library could no longer accommodate WCHS. So, in 1998, WCHS moved into the basement of the Decorah Public Library. DGA already operated out of the library's lower level. The two organizations occupied adjoining rooms. This allowed them to share resources. And some people belonged to both DGA and WCHS. At times, DGA and WCHS held joint meetings. The groups sent out joint newsletters.

But in 2016 the public library informed both groups they would need to relocate by 2017. Around this time, the relationship between the two groups began to deteriorate. DGA secured a new location at the local senior center. DGA began moving its property out of the library location a little bit at a time. WCHS received a historical house to restore; eventually, the house would serve as WCHS's new operating location. In the interim, WCHS planned to store its property in a room in the old local jail.

This case arises from events of November 10, 2016. WCHS vice president Roger Bergan checked out a key from the library circulation desk after hours. Then Bergan and other members of WCHS—including WCHS's president and its

secretary—entered DGA offices and removed microfilms[1] from a filing cabinet. Bergan contends the microfilms were "believed to be either owned entirely by WCHS or jointly by WCHS and DGA since many items had been com[m]ingled by each entity over the years." Bergan and the others moved the microfilm to WCHS's storage space at the jail.

DGA asked WCHS to return the microfilm. WCHS resisted. Eventually, DGA filed a replevin action against WCHS. The two groups reached a settlement agreement, and WCHS returned the microfilm. But the settlement agreement preserved DGA's right to pursue this conversion action, through which DGA seeks damages against Bergan for his part in taking the microfilm.

Bergan filed a motion for summary judgment.[2] The district court concluded Iowa Code section 613.19 (2017) provided Bergan with statutory immunity. Accordingly, the court granted Bergan's motion and dismissed DGA's conversion claim. DGA appeals.

## II. Scope and Standard of Review

"We review summary judgment rulings for correction of errors at law." *Roll v. Newhall*, 888 N.W.2d 422, 425 (Iowa 2016). Summary judgment is appropriate when the file shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "An issue of fact is 'material' only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law." *Nelson v.*

---

[1] Bergan and others also removed index books from the office. For readability purposes, all subsequent references will be limited to the microfilms.
[2] DGA also sought summary judgment as to Bergan's abuse-of-process counterclaim. It is not before us.

*Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)).  "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.'"  *Id.* (citation omitted).  "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference we may draw from the record."  *Id.* at 6–7.  But "[s]peculation is not sufficient to generate a genuine issue of fact."  *Id.* at 7 (quoting *Hlubeck v. Pelecky*, 701 N.W.2d 93, 93 (Iowa 2005)).

As will be further discussed, this appeal turns on whether Bergan was entitled to statutory immunity.  Summary judgment plays a special role in immunity cases.  As Justice Waterman explained in *Lindaman*:

> Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial.  *See Plumhoff v. Rickard*, ___ U.S. ___,___, 134 S.Ct. 2012, 2019, 188 L.Ed.2d 1056, 1064 (2014) ("[T]his [immunity] question could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost."); *Hlubek*, 701 N.W.2d at 98 (noting statutory immunity removes the "'fear of being sued'" and affirming summary judgment (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 408 (1982))).  Indeed, in *Hlubek,* we recognized the defendants' observation that "statutory immunity, like common-law immunity, provides more than protection from liability; it provides protection from even having to go to trial in some circumstances."  701 N.W.2d at 96.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985).

*Id.* at 7 (alterations in original).

## III. Discussion

The district court concluded Iowa Code section 613.19[3] provided Bergan immunity against DGA's suit. On appeal, DGA contends section 613.19 does not apply. Bergan disagrees. In addition, Bergan contends he also is entitled to immunity under section 504.901.[4]

Although the district court's ruling focused on section 613.19, "we may affirm summary judgment on an alternative ground supported by the record and urged by the movant in district court and on appeal." *Deeds v. City of Marion*, 914 N.W.2d 330, 350 n.9 (Iowa 2018). We choose to focus on Bergan's argument concerning section 504.901, which was both raised below and briefed on appeal.

Iowa Code chapter 504 is the Revised Iowa Nonprofit Corporation Act. Iowa Code § 504.101. Section 504.901 is entitled "Personal Liability." It states as follows:

> 1. Except as otherwise provided in this chapter, a director, officer, employee, or member of a corporation is not liable for the

---

[3] Section 613.19 provides:
> A director, officer, employee, member, trustee, or volunteer, of a nonprofit organization is not liable on the debts or obligations of the nonprofit organization and a director, officer, employee, member, trustee, or volunteer is not personally liable for a claim based upon an act or omission of the person performed in the discharge of the person's duties, except for acts or omissions which involve intentional misconduct or knowing violation of the law, or for a transaction from which the person derives an improper personal benefit. For purposes of this section, "nonprofit organization" includes an unincorporated club, association, or other similar entity, however named, if no part of its income or profit is distributed to its members, directors, or officers.

[4] Bergan also makes other arguments, such as his claim that res judicata bars DGA from pursuing "its second suit against Mr. Bergan when DGA has already had the opportunity to fully and fairly litigate its claim against WCHS." Because we conclude Bergan enjoys statutory immunity, we do not reach Bergan's other arguments.

corporation's debts or obligations and *a director, officer, member, or other volunteer is not personally liable in that capacity to any person for any action taken or failure to take any action in the discharge of the person's duties* except liability for any of the following:
      a. The amount of any financial benefit to which the person is not entitled.
      b. An intentional infliction of harm on the corporation or the members.
      c. A violation of section 504.835.
      d. An intentional violation of criminal law.
2. A provision set forth in the articles of incorporation eliminating or limiting the liability of a director to the corporation or its members for money damages for any action taken, or any failure to take any action, pursuant to section 504.202, subsection 2, paragraph "d", shall not affect the applicability of this section.

*Id.* § 504.901 (emphasis added).

As with all statutes, we find the meaning of section 504.901 in the "words chosen by the legislature." *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (citation omitted).

Bergan claims "[t]here is no genuine fact dispute that [he] was a director, officer, member, and volunteer of WCHS" on the night of the microfilm removal. Moreover, Bergan contends, his actions were taken in his discharge of his duties to WCHS. And, as Bergan points out, "DGA makes no claim" that any of the exceptions listed in subparagraphs (a) through (d) apply here. So, Bergan reasons, section 504.901 precludes a finding that he is "personally liable."

DGA disagrees. It doubts that Bergan's efforts to retrieve the microfilm constituted "any action taken . . . *in the discharge of* [Bergan's] *duties.*" DGA notes that the word "duty" means a *legal obligation*, that is, an act *required* by the law. *See Duty*, Black's Law Dictionary (11th ed. 2019) (defining "duty" as "[a] legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right"). And

Bergan was not legally obligated to retrieve the microfilm. So the statute cannot apply.

We disagree. To understand a statute's words, we must consider their context. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). In section 504.901, the phrase "discharge of the person's duties" applies *not only* to the actions of directors and officers *but also* to the actions of any "other *volunteer.*" (Emphasis added.) And many of the "duties" performed by "volunteers" do not involve any legal obligation. Indeed, in everyday usage, a "volunteer" is someone who acts *without* compulsion. *See Volunteer*, Merriam-Webster, https://www.merriam-webster.com/dictionary/volunteer (defining "volunteer" as "a person who voluntarily undertakes or expresses a willingness to undertake a service: such as . . . one who renders a service or takes part in a transaction while having no legal concern or interest"). So, in the context of section 504.901—a statute expressly aimed at protecting "volunteers"—we cannot conclude "duties" means only those actions that are *involuntary*, that is, *required* by law.

DGA also argues that, although Bergan was Vice-President of WCHS, neither WCHS's Articles of Incorporation nor its By-laws permitted Bergan to help retrieve the microfilm "without prior approval of the WCHS Board of Directions." And, DGA notes, prior to the microfilm's removal, "WCHS, as a corporation, had never held a meeting and approved a motion or resolution directing Bergan or anyone else" to remove the microfilm. DGA acknowledges that, just prior to the removal, Bergan "and five WCH[S] members"—including its president and secretary—"met informally" and "decided to remove the microfilm." But the six-member group was shy of the "10-member quorum" anticipated by WCHS's By-

laws. And they "kept no minutes, held no vote and clearly did not follow Robert's Rules of Order" as anticipated by the By-laws. So, DGA contends, "[t]he irregular meeting held by Bergan and five others immediately prior" to the microfilm removal "was clearly not a corporate action of WCHS capable of conferring a 'duty' and hence [statutory] immunity on Bergan's group." And so the actions of Bergan's group were merely "the individual and separate acts of persons who happened to be WCHS members," not actions taken in discharge of their duties to WCHS.

We disagree. We again note that, by its plain terms, section 504.901 immunizes all "volunteers," whether they serve as officers or not. And we do not believe section 504.901 only applies to a volunteer's actions if those actions have been expressly pre-approved by the entire board of directors through a formal vote at a formal meeting. For example, if a volunteer wants to scrape snow off of the sidewalk or change a burned-out lightbulb in the office, do they have to obtain pre-approval from the board as a whole—or else forego immunity? If the legislature had intended to impose such an onerous prerequisite—one that, as a practical matter, would pretty much swallow the statute's grant of immunity—we think the legislature would have said so expressly. It did not.

Instead, we think section 504.901's broad language ("any person," "any action") creates broad protection for Iowans who donate their time and talents to community organizations. *Cf. Vails v. United Cmty. Health Ctr., Inc.*, No. C11-4048-LTS, 2012 WL 6045941, at *17 (N.D. Iowa Dec. 5, 2012) ("Section 504.901 reflects an underlying policy of encouraging community members to serve as directors or officers of nonprofit organizations by granting them immunity and limiting their personal liability. The history of the statute also reflects the

legislature's intent to reduce risk and uncertainty by narrowing the immunity exceptions."). And given the particular facts of this case, we believe Bergan's actions—moving the microfilm WCHS believed it owned to WCHS's new location—fell within its protection.

Several considerations support this view. First, in general, we "presume words used in a statute have their ordinary and commonly understood meaning." *In re A.M.*, 856 N.W.2d 365, 371 (Iowa 2014) (quoting *McGill v. Fish*, 790 N.W.2d 113, 119 (Iowa 2010)); *accord In re Estate of Franken*, ___ N.W.2d ___, ___, 2020 WL 3107692, at *4 (Iowa 2020) (noting "we seek to determine the ordinary and fair meaning of the statutory language at issue"). And we struggle to conclude that efforts by an officer or director to preserve a nonprofit corporation's property would fall outside "the discharge of" that "person's duties," as those terms are commonly understood.

Second, and similarly, we note that Bergan did not act alone. Instead, he worked with a group of several WCHS members. One of them was WCHS's president. And when a "volunteer," like Bergan, assists a nonprofit's president to preserve the nonprofit's property, we believe the volunteer is acting "in the discharge of [their] duties." We think this view fits well with Iowans' common understanding about the "duties" that "volunteer[s]" "discharge" in their service to nonprofit organizations. *See A.M.*, 856 N.W.2d at 371; *cf. Nix v. Hedden*, 149 U.S. 304, 307 (1893) (noting that, although "[b]otanically speaking, tomatoes are the fruit of a vine," they are "vegetables" in "the common language of the people").

Third, it is undisputed that Bergan's purpose was to benefit WCHS. He did not seek or obtain personal gain.

Finally, as Bergan notes, the WCHS board ratified the removal of the microfilms at later meetings. Moreover, when DGA demanded return of the microfilms, WCHS refused. Through these actions, WCHS erased any doubt as to whether removal of the microfilms advanced WCHS's perceived interests. It did.

Given these circumstances, we conclude Bergan's actions were taken in the "discharge of [Bergan's] duties" as a "volunteer" for WCHS, if not also in his role as "officer," "director," and "member" of WCHS. So we conclude Iowa Code section 504.901 provides Bergan immunity against DGA's claim for conversion.[5]

## IV. Conclusion

We affirm the grant of summary judgment in Bergan's favor.

**AFFIRMED.**

---

[5] DGA argues that if section 504.901 provides Bergan personal immunity, DGA would be left "without a full or adequate remedy" and the result would be a taking of DGA's "property without just compensation in violation of the Fifth Amendment to the United States Constitution and article I, section 18 of the Iowa Constitution." *Gacke v. Pork Xtra, LLC*, 684 N.W.2d 168, 171 (Iowa 2004) (summarizing a district court's holding in a takings case wherein a statute provided immunity for a hog confinement). This argument misses the mark. DGA reached a settlement agreement with WCHS and recovered the microfilms. DGA now seeks monetary damages from Bergan for its inability to access the microfilms for a period of time. This does not constitute a takings case under the state or federal constitution. *See Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 546–47 (Iowa 2017) (discussing the various forms of takings cases). Moreover, to the extent DGA argues section 504.901 is unconstitutional, the claim is not sufficiently developed for our review. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (finding passing argument without further development waived).