# IN THE COURT OF APPEALS OF IOWA

No. 20-0912
Filed June 16, 2021

**CITY OF TIFFIN, IOWA,**
    Plaintiff-Appellee,

**vs.**

**TAT, LLC; DERS, LLC; and DUMONT INVESTMENTS, LLC,**
    Defendants,

**and**

**JOHN POWELL RARICK and ROBERT RARICK, Trustees of the Trust under Last Will and Testament of RUTH E. RARICK, DECEASED,**
    Defendants-Appellants.
_____

**JOHN POWELL RARICK and ROBERT RARICK, Trustees of the Trust under Last Will and Testament of RUTH E. RARICK, DECEASED,**
    Counterclaim and Cross-Claim Plaintiffs,

**vs.**

**CITY OF TIFFIN, IOWA; TAT, LLC; DERS, LLC; and DUMONT INVESTMENTS, LLC,**
    Counterclaim and Cross-Claim Defendants.
_____

Appeal from the Iowa District Court for Johnson County, Chad Kepros, Judge.

Trustees of a trust appeal an adverse grant of summary judgment in a condemnation-related proceeding. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Charles A. Meardon, Robert N. Downer, and Peter J. Gardner of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellants.

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellees.

Heard by Doyle, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Trustees of a trust appeal adverse rulings in a condemnation-related proceeding. They challenge the district court's entry of summary judgment in favor of the City of Tiffin (the City), denial of their renewed motion to compel discovery, and invalidation of a conveyance made by the trust.

## I.    Background

A portion of Forevergreen Road existed in the City prior to the events precipitating this litigation. In 2016 and 2017, the City adopted an urban renewal plan and entered into development agreements with Scott Andersen and his business entities, TAT, LLC (TAT) and DERS, LLC (DERS). The plan contemplated development of the Park Place mixed-use renewal project, was "anticipated to include the extension of Forevergreen Road," and would include tax-increment financing. The city council concluded the development would "add diversity and generate new opportunities for the Tiffin and Iowa economies" as well as "generate public gains and benefits, particularly in the creation of new jobs." According to a June 2017 amendment to the urban renewal plan, "corresponding improvements to . . . Forevergreen Road" would be "necessary for such commercial development." The resolution adopting an agreement with one of Andersen's entities confirmed the same. The resolution also noted the "economic development is a public purpose for which a City may provide grants, loans, tax incentives, guarantees and other financial assistance to or for the benefit of private persons." The "master preliminary development agreement" between the City and Andersen's businesses, signed in September, called for the businesses to undertake the extension of Forevergreen Road.

At some point, the Iowa Department of Transportation (DOT) acquired nearby property for the purpose of constructing an interchange on Interstate 380 (I-380) and a new portion of Forevergreen Road in neighboring North Liberty. The original and ongoing plan for the Park Place development was to construct the City's portion of Forevergreen Road further across private tracts of land—separately owned by the trust, TAT, and DERS[1]—to connect to the new portion of the road and interchange constructed by the DOT, which was slightly to the north of where Forevergreen road was located in Tiffin. Andersen and his agents made various offers to purchase the trust property or otherwise receive a right of way for the road extension, all of which were declined. Andersen turned to the City to either purchase or condemn the portion of the trust property it required for the extension. It appears that, in or about September 2018, the development agreement was amended to relieve Andersen and his businesses of the obligation to construct the Forevergreen Road extension, thus leaving the obligation to the City. In November 2018, the City held a public hearing, after which the City's construction of the Forevergreen Road extension, "which could include the use of condemnation," was approved.

The road was ultimately constructed from Tiffin's Forevergreen Road up to the property owned by the trust, which the trust continued to refuse to grant access to. The purple portion of the road in the following image depicts the portion of the planned road that does not fall on trust property, while the yellow area is trust property.

---

[1] Dumont Investments, LLC (Dumont) held a right of first refusal as to the land owned by DERS.



Because access to the trust property could not be obtained, a temporary road not running across the trust property was constructed to provide access to the road connecting to the new portion of Forevergreen Road, as the following image depicts.



The temporary road was opened to traffic in November 2019.

In January 2019, the City filed a petition for determination and declaration of public use or purpose, naming the trust, TAT, DERS, and Dumont as

defendants.  *See* Iowa Code § 6A.24(2) (2019).  The trustees counter- and cross-claimed, disputing the public nature of the improvement and claiming its purpose was to foster private development.  *See id.* § 6A.24(1).  They pointed out that DERS and TAT had a common owner, Andersen, and he began obtaining property in Tiffin for the purpose of establishing the mixed-use development.  The trustees alleged that, pursuant to agreements between Andersen and the City, Andersen was originally responsible for constructing the improvement.  So the trustees claimed the improvement was an economic development activity within the meaning of Iowa Code section 6A.22(2)(b) and was not public in nature, as required by section 6A.22(1).  The City generally admitted the allegations but claimed it was responsible for constructing the improvement, adding it offered to purchase a right of way from the trust.  The City denied the improvement was for the purpose of economic development activities.

In August 2019, the city council passed a resolution to condemn the trust property.  A few days later, the trust deeded the property to the City of Coralville.  The deed conveyed a portion of the property to Coralville for the purpose of constructing the extension of Forevergreen Road, with any parts of the property not encumbered by the road being conveyed back to the trust upon completion.

In January 2020, the City dismissed its claims and moved for summary judgment on the trust's counter-claim.  The City claimed the trust's conveyance of the land to be condemned to Coralville divested the trust of standing to challenge condemnation.  The City also filed an application for condemnation against Coralville in a separate action.

The court denied the motion for summary judgment in February 2020, concluding the trust's reversionary interest in the property was sufficient to confer standing. By this point in time, the City had applied for condemnation against Coralville, a compensation commission had been appointed for the purpose of appraising damages resulting from the taking, and the commission had been scheduled to convene in March. The trust had also applied for a stay or temporary enjoinment of the compensation commission's proceedings. The court issued a stay of those proceedings in its summary judgment ruling. The court also granted the trust's motion to compel.

In March, the City filed a second motion for summary judgment. The City argued Iowa Code chapter 306 granted it authority to connect the new portion of the road to that constructed by the DOT. For this proposition, the City relied on our decision in *Hickman v. Ringgold County*, No. 19-0123, 2019 WL 5791027 (Iowa Ct. App. Nov. 6, 2019). In his supporting affidavit, the City's administrator stated the City has a responsibility "to provide the motoring public with a means of access to and from the new I-380 interchange and the newly constructed portion of Forevergreen Road in North Liberty, Iowa." He also claimed Coralville could not build the road because it was not located in that city. The trust resisted and filed a second motion to compel.

In April, the court entered a ruling granting summary judgment in favor of the City. The court found that while there may have been reliance on economic development as part of the basis for constructing Forevergreen Road, its construction for connection to Forevergreen Road in North Liberty "has a public use, serves a public purpose, and is a public improvement." The court also found

the conveyance to Coralville was invalid.  The court denied the trust's motion to compel as moot.  The court denied the trust's subsequent motion to reconsider, enlarge, or amend.

The trust appeals.

## II.    Standard of Review

"The standard of review for district court rulings on summary judgment is for correction of errors at law."  *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018).  Summary judgement is only appropriate when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Iowa R. Civ. P. 1.981(3).  "An issue of fact is 'material' only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law."  *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)).  "In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor."  *Homan v. Branstad*, 887 N.W.2d 153, 163–64 (Iowa 2016).  Summary judgment is appropriate "if the record reveals only a conflict concerning the legal consequences of undisputed facts."  *Nelson*, 867 N.W.2d at 6 (quoting *Wallace*, 754 N.W.2d at 857).  "To the extent we are asked to engage in statutory interpretation, our review is [also] for correction of errors at law."  *DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 289 (Iowa 2017).

We review a ruling on a motion to compel discovery for discretionary abuse. *Keefe v. Bernard*, 774 N.W.2d 663, 667 (Iowa 2009). A reversal is only warranted when the grounds underlying a district court order are clearly unreasonable or untenable. *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 43 (Iowa 2004).

## III. Analysis

### A. Summary Judgment

The trust first argues the court erred in granting the City summary judgment on the trust's claim that the purpose for which condemnation was being sought was for "economic development activities," within the meaning of Iowa Code section 6A.22(2)(b), and the City therefore has no authority to condemn through eminent domain because economic development activities do not amount to "a public purpose, public use, or public improvement." *See* Iowa Code § 6A.22(1).

First, the trust argues it generated questions of material fact and the court inappropriately weighed evidence in granting summary judgment. The only alleged question of material fact the trust points to is whether the DOT's construction plans changed at some point, which created a necessity that the trust property be acquired for connection to the DOT's portion of Forevergreen Road. But, upon our review, we are unable to conclude this fact question was material to the issue of whether condemnation was being sought impermissibly for "economic development activities" or appropriately for "a public purpose, public use, or public improvement," which was the sole basis for the trust's challenge to condemnation. The question of whether the DOT changed its plans at some point has no bearing

on whether condemnation was being sought for a proper purpose, so this fact issue is not a basis for reversing summary judgment. *See Nelson*, 867 N.W.2d at 6.

Next, the trust complains of the court's purported reliance on our decision in *Hickman v. Ringgold County*, which the trust claims we wrongly decided in the first place, in granting summary judgment.[2] In doing so, the trust wholly ignores a separate important portion of the district court's holding aside from the *Hickman* issues. While the court agreed the road project fell within chapter 306 and was

---

[2] In *Hickman*, Ringgold County sought to condemn private property "for the construction of a new road for the future location of a new concrete batch plant." 2019 WL 5791027, at *1. The property owners filed suit, arguing "condemnation was 'in violation of . . . section 6A.22(2)(a)(3)' because it was 'solely for the purpose of facilitating the incidental private use of the" plant. *Id.* On appeal, we agreed condemnation based on the county's rationale, economic development, violated section 6A.22(2)(b), which "categorically excludes 'economic development activities' from the definition of public purpose." *Id.* at *1–2. That being said, we found the county had statutory authority to upgrade the road under section 306.27, which provides a county board of supervisors "as to secondary roads on [its] own motion may change the course of any part of any road . . . , to straighten a road, or to cut off dangerous corners, turns or intersections on the highway, or to widen a road above statutory width." *Id.* at *2 (second alteration in original). So by virtue of section 6A.21(2), which provides "[t]he limitation on the definition of public use, public purpose, or public improvement does not apply to the establishment, relocation, or improvement of a road pursuant to chapter 306," condemnation was statutorily permitted. *Id.*

The trust argues *Hickman* "glossed over" and did not address "whether the agricultural ground exemptions to the limitations on the definition of public use, purpose or improvement found in section 6A.21(2) were intended to apply to property owner challenges based on section 6A.22." It claims section 6A.21 "applies specifically and only to agricultural land," while section 6A.22 "is not limited to agricultural land" and provides additional limitations on the exercise of eminent domain. So according to the trust, the chapter 306 exception contained in section 6A.21(2) only applies to the definition of public use, purpose, or improvement, contained in section 6A.21(1)(d), which excludes "the authority to condemn agricultural land for private development purposes," while the chapter 306 exception does not apply to the additional prohibition against condemnation for "economic development activities" contained in section 6A.22(2)(b). Based on our disposition, we find it unnecessary to address the trust's challenge to *Hickman*.

therefore a proper purpose under section 6A.21(2),[3] the court found that, while there is some economic development activity in the area, the road will have a public use, serve a public purpose, and amount to a public improvement. We proceed to assess that conclusion for legal error.

"[T]he authority of an acquiring agency to condemn any private property through eminent domain may only be exercised for a public purpose, public use, or public improvement." Iowa Code § 6A.22(1). "Public use," "public purpose," or "public improvement" means, among other things, "[p]rivate use that is incidental to the public use of the property, provided that no property shall be condemned *solely* for the purpose of facilitating such incidental private use." *Id.* § 6A.22(2)(a)(3) (emphasis added).

> *Except as specifically included in the definition in paragraph "a",* "public use" or "public purpose" or "public improvement" does not mean economic development activities resulting in increased tax revenues, increased employment opportunities, privately owned or privately funded housing and residential development, privately owned or privately funded commercial or industrial development, or the lease of publicly owned property to a private party.

*Id.* § 6A.22(2)(b) (emphasis added). So unless the use, purpose, or improvement is public within the meaning of section 6A.22(2)(a), it cannot be considered public if it involves "economic development activities resulting in increased tax revenues, increased employment opportunities, privately owned or privately funded housing and residential development, privately owned or privately funded commercial or industrial development, or the lease of publicly owned property to a private party." *Id.*

---

[3] We find it unnecessary to decide whether chapter 306 rendered the project a proper purpose under section 6A.21(2).

Below, the trust largely argued because the extension of the road was a part of the larger mixed-use development project, it amounted to an economic development activity. That would certainly be the case if trust property was to be condemned and displaced with mixed-use activities. That is not what we have here. It is being displaced with a road, leading to a newly constructed interchange on I-380. The road in its entirety will border the outside of the development and will become a public road upon its completion. And the road will not serve as an access point to I-380 for only the new development; it will serve as an access point to the entire motoring public in the area, including the public that was there and located to the west prior to the existence of the development. While the site plans indicate there will be roads from the development connecting to Forevergreen Road from the south, we find such private use is merely incidental to the public use of the property and reasonable minds could not draw different inferences or reach different conclusions based on the facts before us. *See id.* § 6A.22(2)(a)(3); *Hedlund v. State*, 930 N.W.2d 707, 717 (Iowa 2019). Because the private use will only be incidental to the public use, and the condemnation is not purposed solely on facilitating such incidental private use, we agree with the district court that the road will have a public use, serve a public purpose, and amount to a public improvement within the meaning of section 6A.22(2)(a)(3). Because the exercise of eminent domain here is "specifically included in the definition of paragraph 'a'" of section 6A.22(2), the presence of the ancillary economic development activities does not negate the public nature of the use, improvement, or purpose. *See* Iowa Code § 6A.22(2)(b).

Having examined the record in the light most favorable to the trust and drawn all legitimate inferences in its favor, the legal consequence of the undisputed facts that we find material is the City's entitlement to judgment as a matter of law. We affirm the entry of summary judgment in favor of the City on the trust's section 6A.24(1) challenge to the City's exercise of eminent domain authority.

B.      Motion to Compel

The trust argues the court abused its discretion in denying its motion to compel discovery in conjunction with granting summary judgment. On appeal, the trust only appears to argue it should have been entitled to further discovery on the issue of the DOT allegedly changing its construction plans, thus allegedly necessitating the need for trust property by the City. As noted above, the question of whether the DOT changed its plans at some point has no bearing on whether condemnation was being sought for a proper purpose. So we agree discovery on that issue was irrelevant, and we affirm the denial of the motion to compel.

C.      Quit Claim Deed

Lastly, the trust argues the district court "erred in invalidating the quit claim deed from the trust to Coralville." While the court noted in its summary judgment ruling its determination that the conveyance was invalid, the dispositive portion of the ruling did not order invalidation of the conveyance. When the trust asked for clarification in its motion to reconsider, enlarge, or amend, the court simply noted it stood "by its findings and conclusions regarding the quit claim deed" in the summary judgment ruling. To the extent the summary judgment ruling could be read to invalidate the conveyance, we agree with the trust that the validity of the conveyance was not germane to the claim before the court—that the City was not

exercising its eminent domain authority for a proper purpose. *See, e.g., Eller v. Newell*, 141 N.W. 52, 55 (Iowa 1913) (noting relief allowed "must affect or be affected by the subject-matter of the action" and not "new matter[s] not essential to the determination of that put in litigation by the petition"). So we reverse the district court to the extent its ruling invalidated the conveyance, and we remand the matter to the district court to enter an order clarifying the same.

## IV. Conclusion

We affirm the entry of summary judgment and the denial of the trust's renewed motion to compel. We reverse the district court to the extent its ruling invalidated the quit claim deed, and we remand the matter to the district court to enter an order clarifying the same.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**